IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

ERIE INSURANCE CO.,

    Plaintiff,

    v.                               No. 8:16-cv-02679-RWT

AMAZON.COM, INC.,

    Defendant.

**AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.    BACKGROUND ........................................................................................... 2

    A.    Amazon did not design, manufacture, or sell the headlamp ................... 2

    B.    Amazon provided a service in the form of an online marketplace ......... 4

    C.    Plaintiff's allegations and procedural history ....................................... 6

III.    ARGUMENT ................................................................................................ 6

    A.    Amazon is not liable for an online service that third parties use to sell products .................................................................................................. 7

    B.    The Communications Decency Act bars Plaintiff's claims ................. 14

        1.    Element 1: Amazon is an interactive computer service provider ............ 15

        2.    Element 2: Third parties provided the product offer on Amazon.com ................................................................................... 16

        3.    Element 3: Plaintiff's claims require treating Amazon as publisher of Dream Light's product offer .................................. 17

    C.    The warranty claims fail because Amazon did not sell the headlamp and disclaimed all warranties .................................................................... 21

IV.    CONCLUSION .......................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

CASES

*Almeida v. Amazon.com, Inc.,*
No. 04-20004-CIV, 2004 WL 4910036 (S.D. Fla. July 30, 2004) ...........................................16

*Antone v. Greater Arizona Auto Auction, Inc.,*
155 P.3d 1074 (Ariz. App. 2007)...................................................................................11, 12

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) .......................................................................................17, 20

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ..............................................................................................15

*Beyond Sys., Inc. v. Keynetics, Inc.,*
422 F. Supp. 2d 523 (D. Md. 2006)................................................................................15, 20

*Brejcha v. Wilson Machinery, Inc.,*
160 Cal. App. 3d 630, 206 Cal. Rptr. 688 (1984)..................................................................13

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
519 F.3d 666 (7th Cir. 2008) ................................................................................................16

*Delgadillo v. Unitrons Consolidated, Inc.,*
191 Fed. Appx. 547 (9th Cir. 2006).......................................................................................13

*Doe v. MySpace, Inc.,*
528 F.3d 413 (5th Cir. 2008) .........................................................................................19, 20

*Dudley v. Baltimore Gas & Elec. Co.,*
632 A.2d 492 (Md. App. 1993).........................................................................................8

*Gentry v. eBay, Inc.,*
99 Cal. App. 4th 816 (2002) ..............................................................................16, 18, 19

*Gibson v. Craigslist, Inc.,*
No. 08 Civ. 7735, 2009 WL 1704355 (S.D.N.Y. Jun. 15, 2009)............................................19

*Green v. America Online,*
318 F.3d 465 (3d Cir. 2003)........................................................................................18, 20, 21

*Hinton v. Amazon.com.dedc, LLC,*
72 F. Supp. 3d 685, 689 (S.D. Miss. 2014) ....................................................................19, 20

## TABLE OF AUTHORITIES
### (continued)

Page

*Inman v. Technicolor USA, Inc.*,
  No. 11-666, 2011 WL 5829024 (W.D. Pa. Nov. 17, 2011)..........................9, 16, 19

*Jane Doe No. 1 v. Backpage.com, LLC*,
  817 F.3d 12 (1st Cir. 2016)..........................15, 17, 20

*Joseph v. Amazon.com, Inc.*,
  46 F. Supp. 3d 1095, 1105 (W.D. Wash. 2014)..........................16

*Kabbaj v. Google Inc.*,
  592 Fed. Appx. 74 (3d Cir. 2015)..........................16

*McDonald v. LG Electronics USA, Inc.*,
  219 F. Supp. 3d 533 (D. Md. 2016).......................... passim

*Miles Laboratories, Inc. v. Md. Chapter of the Am. Nat'l Red Cross*,
  556 A.2d 1107 (Md. 1989) ..........................7

*Milo & Gabby LLC v. Amazon.com, Inc.*,
  No. 2016-1290, 2017 WL 2258605 (Fed. Cir. May 23, 2017)..........................2, 10, 11, 13

*Musser v. Vilsmeier Auction Co.*,
  522 Pa. 367, 562 A.2d 279 (1989)..........................12

*Nath v. National Equip. Leasing Corp.*,
  497 Pa. 126, 439 A.2d 633 (1981)..........................13

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com*,
  591 F.3d 250 (4th Cir. 2009) ..........................14, 15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  564 F. Supp. 2d 544 (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009)..........................15

*New Texas Auto Auction Servs. v. Gomez de Hernandez*,
  249 S.W.3d 400 (Tex. 2008)..........................13

*Pahanish v. Western Trails, Inc.*,
  517 A.2d 1122 (Md. App. 1986)..........................7

*Pippin v. Potomac Elec. Power Co.*,
  78 F. Supp. 2d 487 (D. Md. 1999)..........................8, 9

*Reed v. Sears, Roebuck & Co.*,
  934 F. Supp. 713 (D. Md. 1996)..........................8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Schneider v. Amazon.com, Inc.,*
    31 P.3d 37 (Wash. Ct. App. 2001)..................................................................16

*Stoner v. eBay, Inc.,*
    2000 WL 1705637 (Cal. Super. Nov. 1, 2000)....................................................9

*Wood v. Toyota Motor Corp.,*
    760 A.2d 315 (Md. App. 2000)......................................................................7

*Zeran v. America Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) ...............................................................14, 15, 17

## STATUTES

47 U.S.C. § 230................................................................................ passim

Md. Code Ann, Cts & Jud. Proc. § 5-405(a)(5)........................................................8

Md. Com. Law § 2-106(1) .............................................................................7

## OTHER AUTHORITIES

Restatement (Second) of Torts § 402A cmt. k...........................................................7

## I.    INTRODUCTION

Amazon operates an online marketplace on which millions of third-party sellers offer products for sale. These third-party sellers order their products from the manufacturer or upstream distributor, hold title to the products,  decide what and when to sell, and at what price. One of those third-party sellers is Dream Light. It contracted with Amazon and, for a service fee, stored its inventory in an Amazon fulfillment center and used Amazon logistics services to help ship its products, all while holding title to its products and controlling the terms of its offerings. Dream Light sold a headlamp to Trung Cao, who gave it to his friends, the Nguyens, whose residence was insured by Plaintiff Erie Insurance. The headlamp allegedly caused a fire, damaging the Nguyen residence but causing no personal injury.

Erie now seeks to recoup the approximately $313,000 it paid for the fire. It did not sue the headlamp manufacturer or Dream Light. It seeks instead to hold Amazon liable for the loss, even though Amazon did not design, manufacture, or sell the headlamp. Erie's apparent theory is that providing an online marketplace where third parties transact business is sufficient to either deem one a seller or to otherwise make it liable as one. The scope of that liability is as sweeping as it is unsupported. Many entities provide services that facilitate sales and distribution of products. Malls provide physical spaces for transactions. The classifieds and auctions provide marketplaces to connect buyers and sellers. Advertisers bring buyers to sellers. Payment processors like Visa and MasterCard provide the financing that makes most modern transactions possible, and package carriers deliver the products to the end user. The common thread connecting these entities is they are not liable for defects in products sold or distributed with the help of the services they provide.

This Court and the Federal Circuit have both recently held that Amazon's provision of an online marketplace does not make it a seller. *See McDonald v. LG Electronics USA, Inc.*, 219 F.

Supp. 3d 533 (D. Md. 2016); *Milo & Gabby LLC v. Amazon.com, Inc.*, No. 2016-1290, 2017 WL 2258605 (Fed. Cir. May 23, 2017). In *McDonald*, this Court dismissed claims against Amazon arising from a battery sold by a third party that allegedly caused personal injury, holding that providing services that enabled third parties to accomplish a sale did not make Amazon a seller or merchant under Maryland law. 219 F. Supp. 3d at 542. In addition, the Federal Circuit held that Amazon was not a seller under copyright law, using the common meaning of the term and the Uniform Commercial Code as persuasive authority. Because Amazon "merely provides an online marketplace followed by logistical and shipping services after the third-party seller has completed its transaction with a buyer, Amazon is not a seller...." under federal law. *Milo & Gabby*, 2017 WL 2258605 at *9.

These cases reflect the commonsense and well-established principle that providing services that facilitate a sale does not make one a seller. Because Maryland law only imposes liability for product defects on a seller or manufacturer, and Amazon is neither, the Court should grant Amazon summary judgment dismissing all of Plaintiff's claims. But there is another independent ground for summary judgment here because the relevant service Amazon provided was publishing Dream Light's product offer on its website. The Communications Decency Act ("CDA") immunizes internet service providers for liability arising from the publication of third-party content. The headlamp sale to Cao only occurred because Dream Light published an offer on Amazon's website and Cao accepted it. Holding Amazon liable for Dream Light's sale falls within the core of CDA's immunity.

## II.   BACKGROUND

### A.   Amazon did not design, manufacture, or sell the headlamp

Erie claims that a headlamp caused a fire that damaged the residence of its insureds, Mihn and Anh Nguyen, in April 2014. (Compl. ¶¶ 3, 8-9, Dkt. No. 2) A friend of the Nguyens

-2-

gifted them the headlamp, allegedly after purchasing it on the Amazon.com or eBay website. (*Id.* ¶ 10) Plaintiff has dismissed the claims against eBay and contends that the headlamp was given to the Nguyens by Trung Cao, who purchased a headlamp using the Amazon.com website a few weeks before the fire. (Declaration of Fuzheng Liu, ¶ 4 & Ex. A)

The order history for Mr. Cao's transaction is reproduced below and shows that Mr. Cao bought the headlamp from a seller known as Dream Light. (Liu Decl. Ex. A) The red boxes denote the seller.



Dream Light was a third-party seller who listed and sold products on Amazon.com. (Liu Decl. ¶¶ 4, 9) Dream Light owned the product and set the price for its offer, an offer that Mr. Cao accepted when he clicked the order button on Amazon.com. (Liu Decl. ¶¶ 10, 14) The offer was published on a product detail page, which contains a product description, information about sellers and their prices, and product pictures. Amazon never had an offer for this headlamp and therefore did not develop the content for the detail page. That content came from the third-party sellers, like Dream Light, who offered the product for sale. (Liu Decl. ¶ 10) As a result, Amazon made no statements about the product to Mr. Cao. (Liu Decl. ¶¶ 12-13) Amazon also did not design, manufacture, or sell the headlamp, nor did it write its warnings or instructions. (Liu Decl. ¶ 13)

**B.    Amazon provided a service in the form of an online marketplace**

Amazon operates an online marketplace at www.amazon.com. The marketplace is a service that Amazon provides for sellers to offer products and buyers to purchase them. (Liu Decl. ¶ 5) Though Amazon retails some products on its marketplace, it is one of millions of sellers offering products there and it did not sell the headlamp at issue. (Liu Decl. ¶¶ 7, 13)

Amazon makes clear in the *Conditions of Use* that govern use of its website that third-party sellers sell products on the marketplace, and that those sellers, not Amazon, are responsible for the products: "Parties other than Amazon operate stores, provide services, or sell product lines through the Amazon Services. * * * We are not responsible for examining or evaluating, and we do not warrant the offerings of any of these businesses or individuals (including the content of their Web sites). Amazon does not assume any responsibility or liability for the actions, product, and content of all these and any other third parties."[1]

Third parties who wish to sell on the marketplace must set up an account and accept the *Amazon Services Business Solutions Agreement* ("BSA"). (Liu Decl. ¶ 9) The BSA makes clear that Amazon provides a service and the third parties are the sellers. (BSA, Declaration of Joseph Smith, Ex. A) Specifically, the Selling on Amazon Service Terms ("Terms") in the BSA describe "a Service that allows [sellers] to offer certain products and services directly on the Amazon Sites." (*Id.* at 15) The Terms require a seller to "ensure that [it is] the seller of each of [its] Products" on the marketplace. (*Id.* at 16) To this end, the Terms require the seller to "source, offer, [and] sell" its products and "identify [itself] as the seller of [the product] on all packing slips or other information included or provided in connection with [its] Products and as the Person to which a customer may return the applicable product." (*Id.* at 16-17)

---

[1] *See* https://www.amazon.com/gp/help/customer/display.html/ref=footer_cou?ie=UTF8&nodeId=508088 (last visited September 3, 2017).

Amazon provides sellers an online storefront on its marketplace, but third-party sellers are responsible for all aspects of the sale. Specifically:

- The seller decides what to sell and sources the product from the manufacturer or upstream distributor. (Liu Decl. ¶ 11) The *Terms* state that the seller will "source, offer, [and] sell" its products. (BSA at 16)

- The seller is "responsible for any non-conformity or defect in, or any public or private recall of, any of [its] Products." (BSA at 17)

- The seller provides the product description displayed to the buyer. (Liu Decl. ¶ 10) Sellers must provide "accurate and complete Required Product Information for each product or service that [it] offer[s] through any Amazon Site and promptly update such information as necessary to ensure it at all times remains accurate and complete." (BSA at 15)

- The seller sets the price. (Liu Decl. ¶ 10)

- The seller is responsible for ensuring the product is properly packaged and complies with all applicable laws. (Liu Decl. ¶ 10) The seller must "ensure that [its] Materials, [its] Products (including packaging) and [its] offer and subsequent sale of any of the same on any Amazon site comply with all applicable Laws (including all minimum age, marking and labeling requirements) and do not contain any sexually explicit (except to the extent expressly permitted under [Amazon's] applicable Program Policies), defamatory or obscene materials." (Amazon does have some restrictions; for example, sellers cannot sell guns on the site. The *Terms* forbid sellers to "provide any information for, or otherwise seek to list for sale on the Amazon Site, any Excluded Products ….") (BSA at 15)

- The seller offers any warranty of its choosing. (Liu Decl. ¶ 10) Amazon does not warrant third-party products sold on the marketplace.[2]

When a user navigates to a product detail page, the seller is identified in the "sold by" line next to the product's price and shipping information. (Liu Decl. ¶ 15) The seller is again identified on the order confirmation page before the user clicks the "place your order" button. (Liu Decl. ¶ 15) The Details for Order for this transaction reflect that Dream Light sold the headlamp to Trung Cao. (Liu Decl. ¶ 4 & Ex. A).

---

[2] *See* https://www.amazon.com/gp/help/customer/display.html/ref=footer_cou?ie=UTF8&nodeId=508088 at "Disclaimer of Warranties and Limitations of Liability" (last visited September 3, 2017).

Amazon also provided some logistical services because Dream Light participated in the Fulfillment by Amazon program, known as FBA. Participants in the FBA program pay Amazon fees to store their products in Amazon fulfillment centers, but they retain title to their products. (Liu Decl. ¶ 16) When the buyer places an order with the seller, the fulfillment center retrieves the product from the seller's inventory, places it in a shipping container, and delivers it to a shipping carrier such as United Parcel Service. (Liu Decl. ¶ 16) The third-party at all times remains the seller. In fact, sellers can use the FBA service even for products they sell through other online channels. Thus, for example, if a third-party seller sells a product through its own website, it can use the FBA service to fulfill the order. (Liu Decl. ¶ 17)

**C.      Plaintiff's allegations and procedural history**

Erie sued eBay Inc. and Amazon and later dismissed the claims against eBay. (Dkt. No. 20) It did not sue the headlamp seller, Dream Light, or the headlamp manufacturer. Plaintiff's complaint asserts that Amazon is liable for negligence, breach of warranty, and strict liability. (Compl. counts 2, 4, 6)

### III.      ARGUMENT

Amazon did not design, manufacture, or sell the headlamp, nor write the warnings or instructions for it. Amazon did not write the product description that Mr. Cao viewed to purchase the headlamp. Amazon simply provided services—an online marketplace for a buyer and a seller to consummate their own sale, and some logistics.

All of Plaintiff's claims are premised on Amazon selling the headlamp. But Amazon, as a matter of law, cannot be held liable for a product that a third party sold using Amazon's services. Moreover, all of Plaintiff's claims are premised on Amazon allowing a third party to list a product offer on the online marketplace, which is protected by Section 230 of the Communications Decency Act. This brief addresses these two main points first, each of which

disposes of all of Plaintiff's claims, and then addresses additional reasons to dismiss the breach of warranty claim.

**A.    Amazon is not liable for an online service that third parties use to sell products**

Amazon did not design or manufacture the headlamp, nor does Plaintiff allege it did. Plaintiff alleges, however, that Amazon sold or distributed the headlamp, and seeks to impose liability on that basis. (Compl. ¶¶ 21, 22, 39, 40, 59) Plaintiff must establish that Amazon was a seller of the headlamp because Maryland law limits liability for product defects to the manufacturer or seller. *Pahanish v. Western Trails, Inc.*, 517 A.2d 1122, 1133 (Md. App. 1986) (where defendant "was neither the manufacturer nor seller of the product", "no product liability action could possibly have been brought against it"). "In a products liability case, the plaintiff must prove … the attribution of the defect to the seller …." *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 318 (Md. App. 2000).

Maryland law does not extend liability for product defects to providers of services, as Maryland's highest court recognized in *Miles Laboratories, Inc. v. Md. Chapter of the Am. Nat'l Red Cross*, 556 A.2d 1107 (Md. 1989). The Court found that liability under Restatement section 402A depends on being a seller rather than a provider of services, and held that the "preparation and supplying of" blood products "constituted a sale, rather than a service, and hence the provisions of § 402A and Comment k [of the Restatement] are applicable." *Id.* at 1117. It drew a clear distinction between sellers, who can be liable, and service-providers, who cannot.

The definitions of "sale" and "seller" under Maryland law cover Dream Light but not a provider of services ancillary to a sale, such as Amazon. Under the Commercial Code, a "'sale' consists in the passing of title from the seller to the buyer for a price (§ 2-401)." Md. Code Ann, Md. Com. Law § 2-106(1). Here, Dream Light transferred title directly to Cao; Amazon never held title. (Liu Decl. ¶ 13) Moreover, the sealed container statute defines "seller" as a

-7-

"wholesaler, distributor, retailer, or other individual or entity other than a manufacturer that is regularly engaged in the selling of a product whether the sale is for resale by the purchaser or is for use or consumption by the ultimate consumer." Md. Code Ann, Cts & Jud. Proc. § 5-405(a)(5). This definition does not include service providers or entities who happen to help move a product down the chain of distribution. The statute reflects the Legislature's intent to restrict liability for sellers; reading the definition of "seller" to include service providers would violate the plain language and dramatically expand liability for a class the statute intended to protect. *Cf. Reed v. Sears, Roebuck & Co.*, 934 F. Supp. 713, 718 n.4 (D. Md. 1996) (The "fundamental purpose of the defense" was to "limit the liability of retailers and distributors who could not have reasonably discovered defects that originated with manufacturers.")

Maryland law also links seller status to regularly engaging in the sale of a particular product. The sealed container statute's definition speaks of those who "regularly engaged in the selling of a product." So too does Restatement section 402A, which applies only to a seller who "is engaged in the business of selling such product." The defendant must be regularly engaged in selling the particular product. Contact with a product is not enough. Nor is facilitating a sale. Here, Amazon never made an offer for the headlamp, to any buyer. (Liu Decl. ¶ 10) It did not sell even one unit of this headlamp, let alone regularly engage in the business of selling it. While it is true that Amazon sells some things, sales of different products do not make one a seller of all products. *See Dudley v. Baltimore Gas & Elec. Co.*, 632 A.2d 492, 502 (Md. App. 1993) (gas company not strictly liable for alleged defects in meter and pipes it supplied simply because it sold gas); *Pippin v. Potomac Elec. Power Co.*, 78 F. Supp. 2d 487 (D. Md. 1999) (granting summary judgment to power company in electric pole accident because it sold electricity but was not seller of pole).

A service provider like Amazon cannot be liable as a seller under Maryland law for defects in products sold by third parties, even if those services somehow facilitate the sale or delivery of the product. This Court has already dismissed similar claims against Amazon asserted by a different plaintiff, and that ruling is directly on point. The plaintiff in *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d 533 (D. Md. 2016), sued Amazon for negligence, failure to warn, and breach of warranty, alleging that a battery sold by a third party caused personal injury. *Id.* at 535. Though that case involved a motion to dismiss rather than summary judgment, the situations are identical. The plaintiff alleged that "Amazon is an on-line retailer and also offers on-line platforms that enable third parties to sell products on Amazon's website," and third-party seller Safetymind "sells items to consumers via on-line platforms that include Amazon.com"—exactly what occurred here, except with Dream Light as the seller. *Id.* at 540 (internal emphasis omitted). Plaintiff argued that Amazon should be liable for third-party sales because it was a "financial intermediary in sales transactions" and charged a fee. *Id.* at 541.

This Court dismissed the claims because they "fail at step two of the analysis," which is "attribution of defect to *seller*." *Id.* at 541-42 (emphasis added). While the plaintiff alleged that "Amazon facilitated the transaction by providing a platform that enables third parties to sell products," the Court recognized that the "alleged wrongdoing" was "based on the placing in the stream of commerce a defective product," as opposed to an error in payment processing or other aspect of the service Amazon provided. *Id.* at 542 (internal quotation marks and brackets omitted). Amazon's "role as the 'platform' for the third-party sales does not qualify it as a merchant or a seller under Maryland's UCC." *Id.* at 542.[3]

---

[3] Other cases involving eBay's marketplace have reached the same result. *See Stoner v. eBay, Inc.*, 2000 WL 1705637 at *2 (Cal. Super. Nov. 1, 2000) (eBay is not a seller; rather, it "provides interactive computer services for which it charges a fee"); *Inman v. Technicolor USA, Inc.*, No. 11-666, 2011 WL 5829024, *6, 2011 (W.D. Pa. Nov. 17, 2011) (granting motion to dismiss because "plaintiff has not set forth any facts demonstrating that eBay

-9-

The Federal Circuit recently held that Amazon was not a seller with respect to third-party sales in a copyright case, and its analysis is also on point. *Milo & Gabby LLC v. Amazon.com, Inc.*, No. 2016-1290, 2017 WL 2258605 (Fed. Cir. May 23, 2017). Third parties sold pillowcases on the Amazon.com marketplace, which plaintiff Milo & Gabby claimed infringed its copyright. The court recognized that "most of the products offered for sale on Amazon's website are offered by third-party sellers." *Id.* at *1. When "a third-party seller uses Amazon's website to sell a product, the seller provides information regarding the product, such as a product description, images of the product, and a price for the product." *Id.*

The court held that Amazon's marketplace was a service and that Amazon was not the seller of products sold by third parties. The court analyzed the definitions of "sale" and "seller" under federal law and, relevant here, the Uniform Commercial Code and dictionaries. *Id.* at *5. It held that Amazon was not a seller because it did not take title to the products, did not set the price, and did not create the product listing. *Id.* at *6. Amazon "never held title" and "therefore could not sell the product on its own"; Amazon "did not control what information or pictures were put on the product-detail page"; and Amazon did not "control the price for which the product was sold." *Id.* at *6. Consequently, Amazon "was not responsible for the actual listing of the product for sale, consummating the sale, or transferring title. Instead, Amazon merely provided an online marketplace that third-party sellers could use to sell their products and then, in some instances when the third-party sellers used the additional Amazon services, shipped the products to the final destination." *Id.* The court rejected the argument that Amazon's role in facilitating the transaction made it a seller. While "Amazon's services made it easier for third parties to consummate a sale, the third parties remained the sellers." *Id.* Some of the third-party

acts as anything more than an online forum where sellers such as Tube Zone may peddle their wares to buyers such as Inman").

sellers used the FBA service, but the court saw "no difference in Amazon's status in that context." *Id.*

Making a sale possible by providing a marketplace or other services is not the same as making the sale. That is the central point of *McDonald* and *Milo & Gabby*. That point also comports with common sense and basic fairness. Many entities can be said to participate in the distribution of a product by providing services that facilitate commerce, and they are not regarded as sellers for liability purposes. The owner of a mall leases space to merchants, who could not sell without a place to display their wares. Visa and MasterCard extend credit and process payment, without which many transactions would not occur. Logistics providers deliver products to purchasers, and are essential to online purchases. Newspapers run advertisements that connect sellers with buyers. The thread connecting these types of entities is they provide a service essential to distribution of products, but are not liable for defects in products sold using their services. Amazon is no different. Treating Amazon as a seller where it simply provided the marketplace where Dream Light sold a headlamp to Cao would stretch Maryland's definitions of "sale" and "seller" beyond recognition.

Well-established Maryland law rejects liability for providing services that facilitate a sale. So too does the authority in other states that have considered the question. Many courts have held that marketplace providers like auctions are not liable for product defects, even where they orchestrate the sale and deliver the product. Arizona's court of appeals, for example, held that a car auction provider was not a seller under an Arizona statute that defined a seller as a person or entity "engaged in the business of leasing any product or selling any product for resale, use or consumption." *Antone v. Greater Arizona Auto Auction, Inc.*, 155 P.3d 1074, 1075 (Ariz. App. 2007). The auction house shared many traits of traditional sellers in that it was one of the largest

-11-

in the country, had the ability to inspect vehicles before sale, charged buyers and sellers a transaction fee, had indemnity agreements and liability insurance, and was generally better situated than plaintiffs to influence safety and bear the costs of defects. *Id.* at 1077. The court held that the auction was not a seller, reasoning that the auction merely "provides the service of facilitating sales transactions" and had no relationship with the manufacturer that would allow it to influence the design or manufacture of the product. *Id.* at 1079-80.

Amazon's size does not support liability. The Arizona court rejected a reading of its prior cases that would "suggest that insurance coverage and financial ability to pay for losses are the determining factors in imposing strict liability." *Antone*, 155 P.3d at 1078. The Pennsylvania Supreme Court reinforced this point in *Musser v. Vilsmeier Auction Co.*, 522 Pa. 367, 562 A.2d 279 (1989), where it held that an auction house was not a seller. Pennsylvania law broadly defined a seller as "anyone who, as a supplier, enters into the business of supplying the public with products which may endanger them." *Id.* at 371-72. But the auction house, like Amazon, "merely provided a market," and did not have relationships with the manufacturers that would allow it to influence design and manufacture of the products. *Id.* at 373-76. The "auction was the *means* of marketing," just as the Amazon marketplace was Dream Light's means of marketing the headlamp to Cao. *Id.* at 282. The Court declined to extend seller liability based on the auction house's perceived greater ability to "pass on the costs" even though doing so would "provide injured members of the public with another resource." *Id.* at 375.

The key point of these cases is a marketplace operator provides a service connecting buyers and sellers, and is not the seller of products offered by third parties. The Texas Supreme Court emphasized this point in another auction case. While auctioneers "are obviously engaged in sales, the only thing they sell for their own account is their services; the items they auction are

generally sold for others." *New Texas Auto Auction Servs. v. Gomez de Hernandez*, 249 S.W.3d 400, 402 (Tex. 2008). The court also held that the policies behind strict liability did not apply to a marketplace operator. "Businesses that play only an incidental role in a product's placement are rarely in a position to deter future injuries by changing a product's design or warnings. If required to spread risks, they must do so across far more products than the one that was defective. And while many businesses may be able to pay compensation, consumers normally expect a product's manufacturer to be the one who stands behind it." *Id.* at 404; *see also Brejcha v. Wilson Machinery, Inc.*, 160 Cal. App. 3d 630, 640-41, 206 Cal. Rptr. 688 (1984) (affirming summary judgment to auction provider because it "played no more than a random and accidental role in the distribution" of the product and title passed directly from the seller to the buyer).

Similarly, entities that provide financial or logistical services are not sellers, even though they facilitate and are essential to many sales. The *Milo & Gabby* court held that Amazon was not a seller even though the third-party seller participated in the FBA program; Amazon's provision of logistical services did not transform it into a seller. *Milo & Gabby LLC*, 2017 WL 2258605 at *6; *see also New Texas Auction Servs.*, 249 S.W.3d at 403 (a "trucking business that makes deliveries" might be "'engaged' in product sales," but is not a seller); *Delgadillo v. Unitrons Consolidated, Inc.*, 191 Fed. Appx. 547, 551 (9th Cir. 2006) (holding that freight forwarders are not product sellers under Idaho's product liability act, where they "acted as typical freight forwarders and their role was merely to arrange for transportation of the product from the Chinese manufacturer-seller to the American buyer"). Likewise, payment processing and other financial services do not make one a seller, even if they make the transaction possible. *See, e.g., Nath v. National Equip. Leasing Corp.*, 497 Pa. 126, 439 A.2d 633, 636 (1981) ("While it is true that the financing makes the purchase possible, and to that limited extent the financier

can be perceived to have participated in the delivery of the product, such a tangential participation in the supplying of the goods does not justify the imposition of strict liability.").

**B.     The Communications Decency Act bars Plaintiff's claims**

Amazon's connection to Mr. Cao's purchase of the headlamp was providing online space for a third party, Dream Light, to list a product offer on Amazon.com. Section 230 of the CDA provides federal immunity for claims relating to third-party content on marketplaces like Amazon.com, and requires summary judgment dismissing all of Plaintiff's claims even if Maryland law otherwise permitted liability.

Section 230 states that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts state law and bars "state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 254 (4th Cir. 2009). Providers "of interactive computer services are liable only for speech that is properly attributable to them. State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online." *Id.* (internal citation omitted). The immunity extends beyond merely allowing third-party postings; "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

While Congress enacted the CDA in response to perceived overreaches in areas of defamation and obscenity, it did not limit Section 230 to such claims. The "courts have extended the reach of the CDA to immunize ISPs from liability in several settings besides defamation

-14-

suits." *Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 536 (D. Md. 2006). One of Congress' "primary reasons" for establishing a broad immunity was promoting "the development of e-commerce." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003). Congress wanted to encourage "the continued development of the Internet and other interactive computer services and other interactive media" and to preserve "the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(1), (2); *see also Zeran*, 127 F.3d at 330 ("Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum."). In line with these policies and the statutory language, "courts have generally accorded § 230 immunity a broad scope." *Nemet Chevrolet*, 591 F.3d at 254. Indeed, there "has been near-universal agreement that Section 230 should not be construed grudgingly." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016).

Courts within this Circuit extend immunity under Section 230 when the following three-part test is met: (1) the defendant asserting immunity is an interactive computer service provider; (2) the information at issue was provided by another information content provider; and (3) the plaintiff's claims seek to treat the defendant as a publisher or speaker of that information. *McDonald*, 219 F. Supp. 3d at 536; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 548 (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009). Amazon satisfies all three elements.

### 1.      Element 1: Amazon is an interactive computer service provider

Amazon.com is an "interactive computer service," which Section 230 defines as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that

-15-

provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). Amazon's website provides computer access by multiple users to a computer server that allows them to interact with content on the Amazon.com website. (Liu Decl. ¶ 6)

This Court and many others have held that Amazon is an interactive service provider. *McDonald*, 219 F. Supp. 3d at 537; *Almeida v. Amazon.com, Inc.*, No. 04-20004-CIV, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004) (granting Amazon summary judgment under the CDA and stating that it "is irrefutable that Defendant Amazon is an 'interactive computer service'"), *aff'd on other grounds by* 456 F.3d 1316 (11th Cir. 2006).[4]

### 2.    Element 2: Third parties provided the product offer on Amazon.com

The second element requires that the information at issue originate from another "information content provider." An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Dream Light is an information content provider because it created the product offer that it posted on the marketplace. More generally, third parties and not Amazon created the product detail page content for the headlamp. The third-party sellers named the product, described it, and provided product images, and the third parties set their own prices and made their own offers. (Liu Decl. ¶ 10)

---

[4] *See also Kabbaj v. Google Inc.*, 592 Fed. Appx. 74, 74 (3d Cir. 2015) ("[Plaintiff]'s claims against Google, Amazon, and Yahoo are barred by the Communications Decency Act."); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1105 (W.D. Wash. 2014) ("Amazon constitutes an 'interactive service provider."); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 40 (Wash. Ct. App. 2001) (holding that Amazon.com is an interactive computer service provider). Courts have applied section 230 to other online marketplaces like eBay and Craigslist. *See, e.g., Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008) (Craigslist entitled to section 230 immunity for discriminatory housing ads posted by third parties); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 828-35 (2002) (eBay entitled to section 230 immunity for claims relating to sports memorabilia sold by third parties on its website); *Inman*, No. 11-666, 2011 WL 5829024, *6-8 (CDA bars claims against eBay for sales by third parties).

-16-

As this Court held in *McDonald*, element two is satisfied where "the posting for sale was created on Amazon's website by a third party." *McDonald*, 219 F. Supp. 3d at 537. Amazon did not develop the product description for the headlamp listing. It simply published the product offer from Dream Light, which is the core of CDA immunity. *See Zeran*, 129 F.3d at 331.

### 3.   Element 3: Plaintiff's claims require treating Amazon as publisher of Dream Light's product offer

Plaintiff alleges that Amazon engaged in a variety of conduct, including selling the headlamp. In determining CDA immunity, courts look beyond the allegations and names of the causes of action to the real substance of the claim. What "matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). In other words, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Id.* at 1102; *see also Jane Doe No. 1*, 817 F.3d at *19 (the question "does not depend on the form of the asserted cause of action," but instead on "whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another").

All of Plaintiff's claims are based on Dream Light's product listing. That listing is the offer that Mr. Cao accepted when he placed his order. Amazon's publication of that listing is the only act that ties Amazon to the headlamp and Mr. Cao or the Nguyens. Plaintiff's claims reduce to the premise that Amazon is liable for letting Dream Light post a product offer on its website, or failing to police or remove that offer. Claims that a defendant "was negligent in promulgating harmful content and in failing to address certain harmful content on its network" are attempts to hold the website operator "liable for decisions relating to the monitoring, screening, and deletion

-17-

of content from its network," which are "actions quintessentially related to a publisher's role." *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003).

Many CDA cases involve third-party sales of products and services on an online marketplace. The plaintiffs in those cases, like Plaintiff here, make sweeping allegations of selling or facilitating sales which, if accepted on their face, may state a claim outside the CDA's scope. But the courts look beyond the allegations and focus on what the website provider actually did. In doing so, they find that the plaintiff's broad allegations of sale and whatnot are actually premised on allowing a third-party to post an offer to sell a product or service—just what Amazon did here—and hold that section 230 bars the claims.

*Gentry v. eBay, Inc.* is a leading example involving eBay, which is an online marketplace similar to Amazon.com. The plaintiffs claimed that eBay, which "promotes itself as the world's largest on-line marketplace for the sale of goods and services among its users," did not provide authentication certificates for autographed sports memorabilia required by California law. 99 Cal. App. 4th 816, 820 (2002). Third parties "sold the items to plaintiffs, using eBay as a venue." *Id.* at 827. The court recognized that plaintiffs sought to hold "eBay responsible for conduct falling within the reach of section 230, namely, eBay's dissemination of representations made by the individual defendants, or the posting of compilations of information generated by those defendants and other third parties." *Id.* at 831.

The plaintiffs in *Gentry* characterized their negligence claim more broadly as eBay misrepresenting the safety of products sold on its website and failing to prevent unlawful sales. *Id.* at 833. The court held that these claims seek to "hold eBay responsible for having notice of illegal activities conducted by others on its website, and for electing not to take action against those third parties"—claims that "have been uniformly rejected by the courts" because they

-18-

implicate a "publisher's traditional editorial functions." *Id.* at 835. The court noted that eBay "merely made the [third parties'] false product descriptions available to other users on its website," and holding eBay responsible for those false descriptions "puts eBay in the shoes" of the third parties, "making it responsible for their publications or statements." *Id.* at 832-33.

The plaintiffs in another eBay case in the Western District of Pennsylvania tried the same tack, arguing that eBay was liable for defective vacuum tubes because the claims related to "business transactions and the shipping and packaging of goods" rather than third-party content on the site. *Inman*, 2011 WL 5829024, at *6. The argument failed, as courts have "consistently applied [section 230] to communication which resulted in tortious conduct." *Id.* at *7. As yet another case recognized, "eBay has been held immune pursuant to § 230(c)(1) in federal and state litigation concerning the sale of defective or illegal items." *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 689 (S.D. Miss. 2014); *see also Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735, 2009 WL 1704355, at *4 (S.D.N.Y. Jun. 15, 2009) (dismissing complaint alleging Craigslist breached duty to prevent sale of hazardous products like handguns because the claim was based on "alleged failure to block, screen, or otherwise prevent the dissemination of" the third party's gun offer).

Here, Plaintiff tries to escape Section 230 by framing its claims in terms of Amazon inaction rather than third-party content, and in effect seeks to hold Amazon liable for failing to prevent the sale of an unsafe product on its website. (Compl. ¶¶ 22, 29, 35-40, 59). But, in *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008), the Fifth Circuit recognized the inherent "fallacy" in characterizing claims as a website's failure to "implement measures" to protect the website's users and held that such claims were "merely another way of claiming that [the

-19-

defendant] was liable for publishing [third-party] communications" and that the claims spoke to the defendant's "role as a publisher of online third-party generated content." *Id.* at 420.

Cases involving services reach the same result as the product cases, even where the services offered by third parties are unlawful. Backpage.com, for example, operated a website that allowed users to post advertisements for products and services, including for escorts. Plaintiffs claimed the website engaged in sex trafficking and deceptive practices, and argued that its advertising standards were an "affirmative course of conduct" rather than publisher functions. *Jane Doe No. 1*, 817 F.3d at 20. The court disagreed, holding that third-party content "appears as an essential element" of each claim, so the claims "necessarily treat Backpage as the publisher or speaker of content supplied by third parties." *Id.* at 22.

More generally, Section 230 bars any claims for Amazon's failure to prevent or remove listings of allegedly defective products from its website. Publication involves "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. Thus, interactive computer service providers have no duty to monitor or remove postings for improper or unsafe content even if they are aware of a posting's potentially illegal content or receive profit from the product's sale. *See Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 n.9 (S.D. Ms. 2014). "Case law clearly establishes that CDA immunity applies even where an ISP knew of its customers' potentially illegal activity." *Beyond Sys.*, 422 F. Supp. 2d at 536. By way of example, in *Green v. America Online*, the plaintiff argued that AOL was "negligent in promulgating harmful content and in failing to address certain harmful content on its network." 318 F.3d at 471. The court held that the CDA barred the claim because it "attempts to hold AOL liable for decisions relating to the

-20-

monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *Id.* at 471.

**C.    The warranty claims fail because Amazon did not sell the headlamp and disclaimed all warranties**

Plaintiff alleges that Amazon breached "express and/or implied warranties of fitness and merchantability by failing to distribute and/or sell the headlight and failing to ensure that the headlight did not malfunction during the course of ordinary use." (Compl. ¶ 39) Amazon made no warranties because it did not sell the headlamp. A warranty, if any, would have come from the seller, Dream Light. *See McDonald*, 219 F. Supp. 3d at 542 (implied warranty of merchantability did not apply to Amazon because Amazon was merely a marketplace for third-party sales).

Moreover, Amazon's *Conditions of Use*, which govern use of Amazon's website, disclaim all express and implied warranties. They state, in all-caps text: "To the full extent permissible by law, Amazon disclaims all warranties, express or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose."[5] As applied to this transaction, the disclaimer is redundant because Amazon did not issue any warranty and did not sell the headlamp, so no implied warranty could have arisen in the first place.

## IV.    CONCLUSION

Amazon did not make or sell the headlamp that Plaintiff alleges caused the fire. Imposing liability on Amazon for merely providing a service that facilitated a sale is not permitted by Maryland law, is barred by federal law, and is fundamentally unfair. Accordingly, the Court should grant Amazon summary judgment dismissing all of Plaintiff's claims.

---

[5] https://www.amazon.com/gp/help/customer/display.html/ref=footer_cou?ie=UTF8&nodeId=508088 (last visited September 3, 2017).

-21-

Dated:  September 15, 2017    AMAZON.COM, INC.
            By Counsel

            CARR MALONEY P.C.


    By:  */s/Joseph A. Smith*_____
        Kelly M. Lippincott, Esquire
        Joseph A. Smith, Esquire
        2020 K Street, NW
        Suite 850
        Washington, D.C. 20006
        (202) 310-5500 (Telephone)
        (202) 310-5555 (Facsimile)
        kml@carrmaloney.com
        jas@carrmaloney.com

-22-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September 2017 a true and correct copy of the foregoing *Motion for Summary Judgment* was filed and served through the Court's CM/ECF System on:

William H. Murphy, III, Esq.
Nikoletta S. Mendrinos, Esq.
1 South Street
23rd Floor
Baltimore, MD 21202
Hassan.murphy@murphyfalcon.com
nikoletta.mendrinos@murphyfalcon.com

and

Jessie M. Cohen, Esq.
Sacks Weston Diamond, LLC
1845 Walnut Street
Suite 1600
Philadelphia, PA 19103
jcohen@sackswestondiamond.com

*Counsel for Plaintiff*


        */s/Joseph A. Smith*
        Joseph A. Smith