**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

|  |  |
|---|---|
| ERIE INSURANCE CO. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil No.: 8:16-cv-0267RWT |
| AMAZON.COM, INC. | ) |
| | ) |
| Defendant | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

BACKGROUND..................................................................................................3

    a) Amazon sold and/or distributed the headlamp..............................................3

    b) Amazon's role in the sale of the headlamp goes beyond the mere
        provision of an online marketplace.........................................................4

ARGUMENT......................................................................................................6

    a) Standard of Review for Motion for Summary Judgment...................................6

    b) Amazon is a "seller" within the meaning ascribed to the term under
        Md. Code Ann., Cts. & Jud. Proc. § 5-115,  Md. Code Ann.,
        Com. Law § 2-314, Md. Code Ann., Com. Law § 2-103, and
        Restat 2d of Torts, § 402A (2nd 1979)......................................................6

    c) Defendant improperly applied Section 230................................................13

        i. Amazon is not merely an interactive computer service provider,
           but also an information content provider.................................................13

        ii. Plaintiff does not seek to treat Amazon as a publisher, but rather a seller........16

    d) Section 2-314 and Breach of Warranty...................................................21

        i. Amazon breached the implied warranty of merchantability.........................22

        ii. As a seller of "consumer goods" Amazon cannot disclaim any implied
           warranties......................................................................................25

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Case Law**

Alexander v. Sports Auth., Inc., Civil Action No. DKC 2007-0479,
2007 U.S. Dist. LEXIS 43317, at \*8-10 (D. Md. June 14, 2007)................................6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)............................................6

Anthony Pools, Div. of Anthony Indus., Inc. v. Sheehan, 295 Md. 285 (1983)............25

Carafano v. Metrosplash, Inc., 207 F. Supp. 2d 1055 (C.D. Cal. 2002).....................15

Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc., 53 Md. App. 379 (1983).............8

Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.,
461 F. Supp. 2d 681 (N.D. Ill. 2006)...........................................................14,15,16

City of Chi. v. StubHub!, Inc., 624 F.3d 363 (7th Cir. 2010)..................................14

Copiers Typewriters Calculators, Inc. v. Toshiba Corp.,
576 F. Supp. 312 (D. Md. 1983)...................................................................8

Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008).........14,15

Gill v. Rollins Protective Servs. Co., 773 F.2d 592 (4th Cir. 1985)...........................6

Greenman v. Yuba Power Prods., Inc., 59 Cal. 2d 57 (1963)................................11

Klayman v. Zuckerberg, 410 U.S. App. D.C. 187 (2014)....................................14

McDonald v. LG Chem, Ltd., Civil Action No. RDB-16-1093,
2017 U.S. Dist. LEXIS 69538, at \*4 (D. Md. May 8, 2017)................................18

McDonald v. LG Elecs. USA, Inc., 219 F. Supp. 3d 533 (D. Md. 2016)......5,13,14,17,18

Sheeskin v. Giant Food, Inc., 20 Md. App. 611 (1974)....................................8,22

United States v. Diebold, 369 U.S. 654 (1962).................................................6

Vandermark v. Ford Motor Co., 61 Cal. 2d 256 (1964).....................................11

## TABLE OF AUTHORITIES (Continued)

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 5-115.................................................................. .3,7,22

Md. Code Ann., Com. Law § 2-314................................................................3,7,22,24

Md. Code Ann., Com. Law § 2-103................................................................3,8,22

Md. Code Ann., Com. Law § 2-104................................................................22

Md. Code Ann., Com. Law § 2-316................................................................25

Md. Code Ann., Com. Law § 2-316.1................................................................25

47 USCS § 230................................................................5,13,14

Fed.R.Civ.P. 56(c)................................................................6

**Persuasive Authority**

Restat 2d of Torts, § 402A (2nd 1979)................................................................3,8,9,22

Ballentine's Law Dictionary 797 (William S. Anderson ed., 3rd ed. 1969)................................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | | |
|---|---|---|
| **ERIE INSURANCE CO.** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil No.: 8:16-cv-0267RWT** |
| **AMAZON.COM, INC.** | ) | |
| | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Amazon is an online seller and/or distributor of various products. Amazon operates a website where vendors may post products for sale with the assistance, guidance, and under the control of Amazon. Vendors wishing to sell their products via the Amazon website are required to consent to Amazon's Business Services Agreement (hereinafter the "BSA"). Under the agreement, a vendor uploads their product to the Amazon website, including any product descriptions or specifications. When a buyer purchases the product, payment is not made directly to the vendor, but rather to Amazon, who then remits the proceeds to the vendor. Amazon reserves the right to when and how to remit these proceeds. By operation of the BSA, Amazon forces its vendors to grant Amazon an unrestricted license to use and exploit any and all materials provided by the vendor, including but not limited to, intellectual property rights.

Amazon vendors may opt into the Fulfillment by Amazon program (hereinafter the "FBA"), whereby vendors send their inventory to Amazon for storage, safekeeping,

1

and ultimate distribution. Amazon, and not the vendor, is responsible for delivery of a purchased product to its respective carrier. Under the FBA, Amazon reserves for itself the right to refuse any shipment, return, or refund, and holds absolute discretion and control in handling customer service issues relating to packaging, handling, storage, shipment, returns, and refunds.

Dream Light is a vendor who participates in Amazon's FBA program and agreed to the terms of Amazon's BSA. Dream Light uploaded a product posting to the Amazon website for the headlamp in question, which Trung Cao then purchased through the Amazon website. Unbeknownst to Trung Cao, the headlamp was defective, and he gave it to his friends, the Nguyens.



**(NOTE: The above image is NOT the headlamp in issue, only an example of the type purchased)**

The defective headlamp caused a fire, severely damaging the Nguyen residence. As insurer of the Nguyen residence, Erie Insurance paid to its insureds $313,166.57 for damage to the property, loss of use, and other fire related expenses.

Erie seeks to hold Amazon liable for the loss as a result of its role as a seller. Amazon's role in the sales that take place on their website goes beyond that of being a

2

mere platform. Amazon has direct control over a multitude of important business decisions that are ordinarily those of a seller. Consequently, Amazon holds possession and almost unrestricted control of products that they store in their distribution centers under the FBA program. Amazon's role goes beyond that of a mere shopping mall or marketplace, whose primary rights involve collecting rental income, and involves control of the actual transaction and product from start to finish.

Amazon's Motion for Summary Judgment misapplies Maryland law and the Communication Decency Act (hereinafter the "CDA") in arguing that Amazon is not a seller. Under Maryland law, Amazon's activities require it to be treated as a seller, and Erie's claims treat it as such. Contrary to Amazon's contentions, Erie is not seeking to hold Amazon liable for "publishing", but rather the actual act of selling and Erie has properly plead the attribution of injury to Amazon. Amazon is therefore outside the scope of protection offered by the CDA and should be held responsible for the damages sustained.

## II. BACKGROUND

### a. **Amazon sold and/or distributed the headlamp**

Textually, Amazon meets the definition of a seller under Md. Code Ann., Cts. & Jud. Proc. § 5-115, Md. Code Ann., Com. Law § 2-314, Md. Code Ann., Com. Law § 2-103, and Restat 2d of Torts, § 402A (2nd 1979), due to the amount of control Amazon has over a vendor's products, and their role as distributor of those products. See Md. Code Ann., Cts. & Jud. Proc. § 5-115; Md. Code Ann., Com. Law § 2-314; Md. Code Ann., Com. Law § 2-103; Restat 2d of Torts, § 402A (2nd 1979).

3

Amazon's role in the transaction between vendor and buyer is characterized by control and their ability to reap the benefits of a sale. Amazon requires all third party vendors to assent to the terms of the Business Solutions Agreement prior to being able to list a product for sale on the Amazon website. (Decl. of Joseph Smith, Ex. A at 15-16, ECF No. 45.) Under the agreement, Amazon reserves a number of important rights and responsibilities, normally associated with sellers, such as receiving and remitting sale proceeds to the vendor, and having the absolute right to exploit a number of intangible assets associated with a vendor's product. id. at 3. Additionally, Amazon operates the Fulfillment by Amazon program, of which the vendor here is enrolled in. Under the agreement for the program, Amazon reserves for itself the right to make important business decisions, normally associated with sellers, such as packaging, handling, shipping, customer service inquiries, returns, and refunds. id. at 37.

The Plaintiff's insureds here borrowed the headlamp from Trung Cao who purchased the headlamp from the Amazon website through a vendor known as Dream Light. In posting the product to Amazon's website, Dream Light assented to the terms of the Business Solutions Agreement. Additionally, Dream Light participated in Amazon's Fulfillment by Amazon program, thereby granting Amazon the above-mentioned rights and responsibilities. (Decl. of Joseph Smith, ECF No. 45, at 1.)

Because Amazon reserves certain rights and takes on certain responsibilities associated with selling the product, Amazon sold and/or distributed the headlamp.

**b.  <u>Amazon's role in the sale of the headlamp goes beyond the mere provision of an online marketplace</u>**

Ordinary interactive service providers generally operate their websites in such a way as to give absolute control to its users, without the generation of additional content by the service provider. Information content providers, on the other hand take a much more active role, by producing online content, among other things.

As an information content provider, Amazon not only provides a platform for users to buy and sell goods, but also generates content that is relevant to a particular transaction. When a potential buyer searches for a product, Amazon makes recommendations as to which product is best by way of the Amazon Choice feature. (Decl. of Jesse Cohen, Ex. C at 1-2). Similarly, Amazon recommends supplemental or additional products they feel buyers might be interested in, and send buyers email updates about products that they have viewed, but not purchased. (Decl. of Jesse Cohen, Ex. D at 1-3) Because Amazon generates content in promoting and recommending products, it takes on the role of an information content provider, rather than simply an interactive service provider.

In order to assert a claim against an information content provider, the Plaintiff must properly attribute the resulting injury to the Defendant, by asserting that the Defendant's conduct caused the injury. McDonald v. LG Elecs. USA, Inc., 219 F. Supp. 3d 533, 536 (D. Md. 2016). A Plaintiff may not hold an information content provider liable for mere publication of information provided by a third party. See 47 USCS § 230.

Here, the plaintiff has properly pled attribution of the injury to Amazon by including specific factual allegations showing that Amazon is responsible for the injuries caused under the theories of negligence and breach of warranty. (Compl., ECF No. 1 at 5-6, 8-9.) Because Amazon is an information content provider, and because the Plaintiff

seeks to hold Amazon liable for the actual injury rather than mere publication of third-party content, Amazon may not escape liability.

### III. ARGUMENT

#### a. Standard of Review for Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Alexander v. Sports Auth., Inc., Civil Action No. DKC 2007-0479, 2007 U.S. Dist. LEXIS 43317, at *8 (D. Md. June 14, 2007). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. Alexander, Civil Action No. DKC 2007-0479, 2007 U.S. Dist. LEXIS 43317, at *8. The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. id. at *8-9; See also Fed.R.Civ.P. 56(c).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. See United States v. Diebold, 369 U.S. 654, 655 (1962); Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. Alexander, Civil Action No. DKC 2007-0479, 2007 U.S. Dist. LEXIS 43317, at *9.

#### b. Amazon is a "seller" within the meaning ascribed to the term under Md. Code Ann., Cts. & Jud. Proc. § 5-115, Md. Code Ann., Com.

6

**Law § 2-314, Md. Code Ann., Com. Law § 2-103, and Restat 2d of**

**Torts, § 402A (2nd 1979)**

The Maryland code provides a number of definitions of the word "seller", all of which include overlapping characteristics, such that Amazon should be treated as a seller in the case at bar.

For the purposes of product liability actions arising in foreign jurisdictions, Maryland defines the term "seller" as, "a wholesaler, distributor, retailer, or other individual or entity other than a manufacturer that is regularly engaged in the selling of a product whether the sale is for resale by the purchaser or is for sale to or consumption by the ultimate consumer." Md. Code Ann., Cts. & Jud. Proc. § 5-115. Consequently, for the purposes of imposing implied warranties in transactions involving defective products, Maryland defines the term "seller" as including, "the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer." Md. Code Ann., Com. Law § 2-314.

A simple glance at the black letter text of the aforementioned statutes reveals the Maryland legislature's intent to construe the term "seller" broadly, because both statutory definitions include a multitude of categories of persons such as wholesalers, distributors, and retailers, as well as including the catch-all category of "other middleman", rather than limiting the term to one in privity with the buyer. In fact, the Maryland implied warranty statute specifically states that one need not be in privity with the buyer in order to be a seller. id. Along these lines, Maryland courts have held that a buyer may bring a claim for breach of that implied warranty against a party in the chain of distribution other

7

than the party from which he directly purchased the goods.    Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F. Supp. 312, 323 (D. Md. 1983).[1]

Maryland has adopted Restat 2d of Torts, § 402A (2nd 1979) and imposes liability on sellers who distribute unreasonably dangerous products. Restat 2d of Torts, § 402A (2nd 1979).    Under the Restatement, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby…if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."    id.    The comment to the Restatement elaborates that the rule, "applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus, for example, the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home." id.

The evidence in the record supports the proposition that Amazon is a seller due to its role as a distributor, or alternatively, as some "other middleman" in the process of selling or distributing a particular vendor's product.    Ballentine's Law Dictionary defines

---

[1] Alternatively, Md. Code Ann., Com. Law § 2-103 defines a seller as a person who sells or contracts to sell goods. Md. Code Ann., Com. Law § 2-103.  While an actual sale requires the passage of title from the alleged seller to the buyer, a contract for sale does not. Sheeskin v. Giant Food, Inc., 20 Md. App. 611, 628 (1974) (question of whether a contract for sale exists is not dependent upon the passage of title).  More importantly, Maryland courts have held that dealership and distributorship contracts fall within the sales provision of the U.C.C. and therefore qualify as a "contract for sale" under Md. Code Ann., Com. Law § 2-106. Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc., 53 Md. App. 379, 394 (1983). Because Amazon acts as a distributor with respect to vendor products and because the terms of the Fulfillment by Amazon agreement amount to a writing that would qualify as a contract, Amazon maintains a uniform contract for sale that requires it to be treated as a seller under Md. Code Ann., Com. Law § 2-103. id.

8

the term "middleman" in part as, "[a]n intermediary. One engaged, not to negotiate a sale or purchase, but simply to bring two parties together and permit them to make their own bargain." Ballentine's Law Dictionary 797 (William S. Anderson ed., 3rd ed. 1969).

Under Amazon's Business Solutions Agreement (hereinafter "BSA") "Selling on Amazon Service Terms", Amazon explains that it will receive all sales proceeds on behalf of the vendor, for later remittance to the vendor, rather than having the proceeds go directly to the vendor. (Decl. of Joseph Smith, Ex. A at 15-16, ECF No. 45.) Additionally, the terms of such remittance are at the sole discretion of Amazon. id. at 19. ([W]e will remit to you on a bi-weekly (14 day) (or at our option, more frequent) basis…any sales proceeds received, but not previously remitted to you…). By obtaining and distributing proceeds from the sale between buyer and vendor, on its own terms, Amazon acts, inter alia, as a middleman in facilitating the transaction.

While Amazon claims that it does not take title to the particular goods in question, a contract (the BSA) does exist between Amazon and its vendors, which operates to give Amazon unfettered control of the goods in question and the terms of their sale. By operation of the BSA, Amazon forces it's vendors to grant Amazon an almost unrestricted license to use a particular vendor's product information in any way Amazon sees fit. Subsection 4 of the BSA provides in relevant part:

> You grant us a royalty-free, nonexclusive, worldwide, perpetual, irrevocable right and license to use, reproduce, perform, display, distribute, adapt, modify, re-format, create derivative works of, and otherwise commercially or non-commercially exploit in any manner, any

and all of Your Materials, and to sublicense the foregoing rights to our Affiliates and operators of Amazon Associated Properties...

Id. at 3

The BSA defines "Your Materials" as, "all Technology, Your Trademarks, Content, Your Product information, data, materials, and other items or information provided or made available to your or your Affiliates to Amazon or its Affiliates. id. at 13. Further, the BSA defines "Technology" as:

> [A]ny (a) ideas, procedures, processes, systems, methods of operation, concepts, principles and discoveries protected or protectable under the laws of any jurisdiction; (b) interfaces, protocols, glossaries, libraries, structured XML formats, specifications, grammar, data frmats, or other similar materials; and (c) software, hardware, code, technology or other functional item.

Id.

Defendants argue that Amazon is merely an online marketplace and not a seller. (Decl. of Joseph Smith, ECF No. 45, at 1.) Amazon's reservation of an unrestricted right to use, modify, or otherwise dispose of their vendors' "materials" goes beyond the ordinary rights and duties of a mere market place or shopping mall. Here, Amazon has much more control, beyond that of a regular mall, because it reserves the right to exploit the vendor's product information in a way that interferes with the vendor's control of their own product. Under the provisions quoted above, by consenting to the BSA, vendors provide Amazon with an unrestricted license to use and exploit not only the mere product descriptions and specifications provided by the vendor, but also certain

10

intellectual property rights and technology associated with the product itself. Amazon's licensing provision masks the gravity of the rights conveyed to them, by including valuable, intangible assets within the scope of "Your Materials", namely, the intellectual property and technology fundamental to the product's operation and identity. By including this provision, Amazon has granted itself the right to monetize their possession of vendor products, while attempting to shield themselves from liability under the guise of being a "mere marketplace."[2]

Consequently, Amazon operates a storage and distribution service known as "Fulfillment by Amazon" (hereinafter "FBA"). (Decl. of Joseph Smith, Ex. A at 33, ECF No. 45.) Vendors may opt into the service, and in doing so ship all units of their product to Amazon, rather than to the ultimate buyer. id. At the same time, Amazon reserves the right to refuse any shipment. id. Assuming that Amazon chooses to accept the shipment, Amazon provides the storage necessary to hold the goods, as well as retaining the right to move units among facilities. id. at 35. When an order is placed, the fulfillment center retrieves the item from storage, places it in a shipping container, and distributes it to a shipping carrier. (Liu Decl. ¶ 16) Once the item has been delivered to the carrier, Amazon retains the right to control the terms of the transaction, including packaging,

---

[2] In 1963 the California Supreme Court constructed the doctrine of strict product liability as it applied to a manufacturer of goods, and merely year later expanded the doctrine to cover retailers of defective products. See Greenman v. Yuba Power Prods., Inc., 59 Cal. 2d 57, 62 (1963); Vandermark v. Ford Motor Co., 61 Cal. 2d 256, 262 (1964). The court determined that, "Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products…the retailer's strict liability thus serves as an added incentive to safety… Strict liability…affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship." Vandermark, 61 Cal. 2d at 262.

11

handling, and return of vendor products. (Decl. of Joseph Smith, Ex. A at 37, ECF No. 45.)  The FBA provides in relevant part:

> We will be responsible for and have sole discretion regarding all customer service issues relating to packaging, handling and shipment and customer returns, refunds and adjustments related to Amazon Fulfillment Units.  We will have the right to determine whether a customer will receive a refund, adjustment or replacement for any Amazon Fulfillment Unit and to require you to reimburse us where we determine you have responsibility in accordance with the agreement.

Id.

The FBA program places Amazon directly in the role of a seller by allowing Amazon the ability to control the distribution of vendor products.  As discussed in the FBA, Amazon is the one responsible for physical delivery of the product from inventory to the carrier, not the actual vendor.  More importantly, it is Amazon and not the vendor who reserves the crucial decision-making authority about whether or not to authorize a refund and how to approach customer service issues; tasks that are often associated with the business of selling.  By removing these vital rights from the vendors, Amazon is able to maintain a level of control over vendor inventories that goes well beyond the scope of a mere "platform".

Amazon cannot undertake these tasks that are normally those of the seller and benefit financially from them, and simultaneously claim not to be a seller.  Fundamental principles of fairness and equity under the law do not allow one to benefit  from acting as a seller, while disclaiming all liability for a sale

12

c.  **Defendant improperly applied Section 230**

The Defendant improperly applied 47 USCS § 230 and its protections to the case at bar.  In order to hold an online seller such as Amazon liable for a product defect, the court must find that Amazon is an internet content provider rather than a mere interactive computer service.  47 USCS § 230.  The court must then find that the Plaintiff is seeking to hold Amazon liable for the resulting injury (i.e. that the Plaintiff has properly attributed the resulting injury to Amazon in the pleadings) rather than for publishing the information provided by the vendor.  id.  The following analysis will explain why Amazon is an internet content provider, how Plaintiff has properly attributed the injury to Amazon, and why the statutory protections do not apply.

In assessing claims of immunity under 47 USCS § 230 (hereinafter "Section 230"), Maryland courts apply a three-part test: (1) whether Defendant is a provider of an interactive computer service; (2) if the postings at issue are information provided by another information content provider; and (3) whether Plaintiff's claims seek to treat Defendant as a publisher or speaker of third party content.  McDonald, 219 F. Supp. 3d at 536.  The following analysis will distinguish McDonald from the present case and demonstrate that Section 230 is inapplicable to Amazon.

i.  **Amazon is not merely an interactive computer service provider, but also an information content provider**

The first step in a Section 230 analysis requires finding that the online entity in question is an internet content provider rather than an ordinary interactive computer service.  As will be explained in the following analysis, Amazon is an internet content provider, because it produces content with respect to vendor products, rather than simply

13

operating a user-to-user marketplace where only users provide content. Amazon's ability to promote products, make recommendations, and otherwise communicate with buyers and vendors about their products, allows Amazon to take an active role in selling products, as opposed to solely publishing vendor product information.

Section 230 provides certain protections for interactive computer services that face possible liability for the actions of third party internet content providers. See 47 USCS § 230. The rule does not create blanket immunity, nor does it bar any cause of action, but rather seeks to differentiate between those who provide content and those who merely publish it. See City of Chi. v. StubHub!, Inc., 624 F.3d 363, 366 (7th Cir. 2010); Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc., 461 F. Supp. 2d 681, 693 (N.D. Ill. 2006). Courts have already held that Amazon is an interactive computer service. McDonald v. LG Elecs. USA, Inc., 219 F. Supp. 3d 533, 537 (D. Md. 2016). It is the plaintiff's position; however, that Amazon is also an internet content provider, and should not be entitled to the protections of Section 230.

Section 230 defines the term "internet content provider" as, "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 USCS § 230. A website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online. Klayman v. Zuckerberg, 410 U.S. App. D.C. 187, 191 (2014). On the contrary, those websites who take a more active role in providing a platform for third party users may evolve into information content providers. Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157, 1161 (9th Cir. 2008) (a website operator can be both a service

14

provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is responsible, in whole or in part for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content). Courts have not hesitated to elevate interactive service providers to the level of content providers. See generally Carafano v. Metrosplash, Inc., 207 F. Supp. 2d 1055, 1066 (C.D. Cal. 2002). For example in Carafano, the court held that the website Matchmaker, an internet dating website, was an information content provider, rather than a mere interactive computer service, and therefore not entitled to the protections of Section 230. id. The court reasoned that users of the Matchmaker website do not simply post whatever information they desire, but rather a profile for each user is created from the questions asked by Matchmaker and the answers provided by the user. id. Therefore, the court held that by conducting its service, Matchmaker does not just provide a site for people to post whatever information they choose. id. Similarly, other courts have held that a website's own actions, such as posting a questionnaire and requiring answers to it, are outside the scope of Section 230 protection. Roommates.com, LLC, 521 F.3d at 1165.

On the other hand, courts have held that websites that host purely user generated content are not information content providers. See Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc., 461 F. Supp. 2d 681, 698-99 (N.D. Ill. 2006). In Craigslist, Inc., the court held that popular online bulletin and posting board, Craislist.com, was not an information content provider. id. The case involved the

15

posting of discriminatory housing notices by users on the Craigslist.com bulletin. id. The court held that although the content was posted on the Craigslist.com website, Craigslist, Inc. did not develop or post the content, and that therefore the company was entitled to the protections of Section 230, because imposing liability would punish the company for acting as a publisher. id.

Here, Amazon is more akin to the websites in Carafano or Roomates.com, LLC. Like the websites in those cases, Amazon takes a more active role in a transaction than merely providing an online platform. Amazon goes well beyond the mere act of publishing, and even recommends supplemental products for users to purchase in addition to an item they are currently viewing. (Decl. of Jesse Cohen, Ex. E) In the event that a user does not purchase a particular item they are viewing, Amazon will remind them about the item and similar items, by email, at a later time. (Decl. of Jesse Cohen, Ex. D at 1) Furthermore, the Amazon Choice feature demonstrates that not only does Amazon post a product listing, but also promotes and encourages the purchases of those products it deems best. (Decl. of Jesse Cohen, Ex. C at 1-2) Unlike the website in Craigslist, Inc., Amazon does not rely on users themselves to consummate a deal after posting. As mentioned above, Amazon controls the entire payment, packaging, and return process, as well as reserving the right to make all important decisions thereto; a feature that is not present with Caigslist.com.

ii. **Plaintiff does not seek to treat Amazon as a publisher, but rather a seller**

The essence of Section 230 is that it protects interactive service providers from liability where a plaintiff seeks to hold them liable for acts of publishing. See Barnes v.

Yahoo!, Inc., 565 F.3d 560, 562 (9th Cir. 2009). The defendant may argue that plaintiff is seeking to hold Amazon liable for acts of publishing, and relies on precedent in doing so; however, the relevant case authority supports the proposition that Amazon is not immune from suit under Section 230. See generally McDonald v. LG Elecs. USA, Inc., 219 F. Supp. 3d 533, 537 (D. Md. 2016). In fact, in McDonald, the court considered the applicability of Section 230 to Amazon and held that, by framing the issue as Amazon's role in selling the defective product rather than simply advertising it, the plaintiff was not seeking to hold Amazon liable for publishing, but rather for selling a defective product, and therefore, the protections of Section 230 did not apply to bar the plaintiff's negligence and breach of warranty claims. id. at 537. The court noted the following language from the Ninth Circuit:

> The Internet is no longer a fragile new means of communication that could easily be smothered in the cradle by overzealous enforcement of laws and regulations applicable to brick-and-mortar businesses. Rather, it has become a dominant—perhaps the preeminent—means through which commerce is conducted. And its vast reach into the lives of millions is exactly why we must be careful not to exceed the scope of the immunity provided by Congress and thus give online businesses an unfair advantage over their real-world counterparts, which must comply with laws of general applicability.

Id. at 538.

Nonetheless, the court in McDonald dismissed the plaintiff's negligence and breach of warranty claims; however, the dismissal was not due to the protections of Section 230. id. at 542. Instead, the court dismissed the claims on the grounds that the

plaintiff failed to show attribution of the injury to Amazon, as a result of insufficient pleading in the complaint. id. There, the plaintiff's complaint alleged, ""[o]n November 5, 2014, Plaintiff ordered two LG rechargeable batteries from the Amazon website. The batteries were designed, manufactured and sold by LG. The batteries were sold and shipped to Plaintiff by Safetymind, and Plaintiff received them." id. The court held that although the plaintiff properly alleged that Amazon facilitated the transaction, the aforementioned provision showed attribution of the actual injury to another party, and that therefore the plaintiff's negligence claim must be dismissed. id. Similarly, in a later proceeding on the same matter, the court dismissed the plaintiff's breach of warranty claim despite pleading that Amazon regularly sells the goods in question, because the plaintiff failed to indicate that Amazon had any particular knowledge or skill about the goods in question. McDonald v. LG Chem, Ltd., Civil Action No. RDB-16-1093, 2017 U.S. Dist. LEXIS 69538, at *4 (D. Md. May 8, 2017) (While plaintiff asserts that Amazon regularly sells batteries, there is no indication that Amazon has any particular knowledge or skill about batteries so as to qualify Amazon as a merchant of such products—or that Amazon holds itself out as such. Accordingly, plaintiff's breach of implied warranty claim against Amazon also must fail).

It is important to first note that here, the plaintiff's negligence and breach of warranty claims should not be dismissed on the grounds of Section 230, because Section 230 is inapplicable when a party is not seeking to treat another as a publisher. Here, the plaintiff seeks to treat Amazon as the seller and/or distributor of a defective headlamp that ultimately led to a devastating fire, rather than just a website that allowed for the posting. Secondly, it is crucial to note that the plaintiff's complaint here clearly pleads

18

attribution of the injury to Amazon in both Count II (Negligence) and Count IV (Breach of Warranty) of the complaint. (Compl., ECF No. 1 at 5-6, 8-9.) In Count II, Plaintiff properly pleads that Amazon owed a duty to the Plaintiff's insureds and breached that duty by:

a)  Failure to distribute, sell and otherwise place into the stream of commerce a properly functioning headlight;

b)  Failure to test, inspect, and examine the headlight to ensure it was in working condition prior to sale and distribution;

c)  Failure to distribute and sell the headlight in a safe and working manner so as to avoid the risk of fire;

d)  Failure to distribute and sell the headlight in a safe and working manner so as to avoid the risk of fire;

e)  Placing the headlight into the stream of commerce when defendant knew, or should have known, that it contained defects in materials or workmanship which rendered it unsafe for its ordinary and expected use.

f)  Selling, distributing and conveying a defective product;

g)  Selling, distributing and conveying a product not fit for its ordinary and intended use;

h)  Selling, distributing and conveying a product without testing or inspection to see that it conformed to all applicable safety standards;

19

i)     Placing a defective, dangerous and unfit product into the stream of commerce;

j)     Offering a defective, dangerous and unfit product for sale;

k)     Offering products for sale in the United States without verifying that they meet applicable safety standards and regulations;

l)     Offering products for sale in the United States without testing or inspection to verify compliance with applicable safety regulations;

m)     Offering for sale counterfeit, fake or, non-authentic products and components in violation of United States law;

n)     Failing to verify the authenticity of products sold; and,

o)     Failing to suspend, bar or terminate the accounts of sellers who defendant knows, or should know, are engaged in the sale of dangerous, defective, unsafe, or counterfeit goods.

Id. at 5-6.

Similarly, in Count IV, Plaintiff properly pleads that Amazon breached implied warranties pertinent to the sale of the headlamp:

Defendant implied that the headlight would be created in a workmanlike manner and with the necessary knowledge, skill, care and ability. Defendant breached this agreement when it improperly distributed and sold the headlight…Plaintiff relied on Amazon.com Inc.'s skill, judgment and implied warranties of fitness and merchantability, as well as the other warranties made by Amazon.com Inc., with respect to the distribution and sale of the headlight.  Defendant, by and through its agents, workmen and

employees, breached the above-mentioned express and/or implied warranties of fitness and merchantability by failing to distribute and/or sell the headlight and failing to ensure that the headlight did not malfunction during the course of normal use.

Id. at 8-9.

As demonstrated by the aforementioned pleadings, the Plaintiff here has properly pled attribution of the injury to Amazon under both theories of liability. Unlike the Plaintiff in McDonald, the plaintiff here did not even mention the vendor or manufacturer of the product in its complaint. The Plaintiff's sole argument is that Amazon alone caused the resulting injury and should be held responsible. In so arguing, the Plaintiff has pled its case with a level of specificity that was not present in the case before the court in McDonald, and therefore McDonald's reasoning should not be applied to this case.

With respect to the breach of warranty claim, Amazon does have specialized knowledge of the goods in question as demonstrated by (1) the sheer volume of headlamps they sell, (2) their use of a specific product category purely for headlamps, (3) their use of the Amazon Choice feature to guide user purchase decisions, (4) their knowledge of proper storage, maintenance, and shipment of headlamps for vendors participating in the FBA program, and (4) their promotion of supplemental, additional, or other products related to headlamps while purchasers scroll down a product page. All of these additional features demonstrate that Amazon has more knowledge and skill about the products it sells, than a purely user to user website. (Decl. of Jesse Cohen, Ex. A-E).

d. **Section 2-314 and Breach of Warranty**

21

### i. **Amazon breached the implied warranty of merchantability**

In an action based on breach of warranty it is for the plaintiff to show the existence of the warranty, the fact that the warranty was broken and that the breach of warranty was the proximate cause of the loss sustained. Sheeskin, 20 Md. App. at 620-21. A plaintiff may prove the existence of a warranty by evidence of an express warranty, or arguing that such warranty is implied. A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Md. Code Ann., Com. Law § 2-314. Maryland defines a merchant as, "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the...goods involved...or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Md. Code Ann., Com. Law § 2-104.

As mentioned above, the Court should treat Amazon as a seller for the purposes of allocating product liability. See Md. Code Ann., Cts. & Jud. Proc. § 5-115; Md. Code Ann., Com. Law § 2-314; Md. Code Ann., Com. Law § 2-103; Restat 2d of Torts, § 402A (2nd 1979). Additionally, the Court should treat Amazon as a merchant with respect to the type of goods in question. Here, the defective product was a headlamp. A simple search of the keyword "headlamp" on the Amazon website reveals pages upon pages of headlamps for sale by various vendors. (Decl. of Jesse Cohen, Ex. A at 1-6) More importantly, the search reveals an Amazon generated product category called "headlamps", that when clicked, directs the user to about two-hundred and ninety six (296) pages full of headlamps available through Amazon. (Decl. of Jesse Cohen, Ex. B

22

at 4)  Some of these headlamp postings contain an "Amazon's Choice" designation, indicated by a banner next to the product name, notifying the user that this particular product is one that Amazon recommends.  (Decl. of Jesse Cohen, Ex. C at 2) (Amazon's Choice recommends highly rated, well-priced products available to ship immediately).

It would be logical to conclude that, with such an overabundance of headlamps for sale, Amazon should be considered as "dealing in goods of the kind."  It necessarily follows that their development of a specific product category for headlamps further evidences this point, or at the very least demonstrates that Amazon holds themselves out as having knowledge peculiar to headlamps, by way of their ability to compartmentalize the products into one department.  Surely the Amazon Choice feature establishes that Amazon has such knowledge because the feature allows them to promote some products as opposed to others.  Along this line of reasoning, Amazon should be considered a merchant, who deals in goods of the kind in question, and the implied warranties should apply to the defective headlamp.

In the event that Amazon is not found to "deal in goods of the kind", the comment to Md. Code Ann., Com. Law § 2-314 explains that Amazon may nonetheless be subject to the implied warranty rule:

> Although a seller may not be a "merchant" as to the goods in question, if he states generally that they are "guaranteed" the provisions of this section may furnish a guide to the content of the resulting express warranty. This has particular significance in the case of second-hand sales, and has further significance in limiting the effect of fine-print disclaimer clauses

23

where their effect would be inconsistent with large-print assertions of "guarantee".

Md. Code Ann., Com. Law § 2-314 (Comment 4).

The comment does not specify what the "guarantee" must apply to. However; while Amazon does not expressly guarantee the quality of any product, there are a number of indications of general guarantees that should fall under the comment to the statute. First and foremost Amazon guarantees whether the product is in stock by label on the product page, allowing Amazon to control whether a sale is ultimately made. (Decl. of Jesse Cohen, Ex. C at 2)  Second, Amazon provides guaranteed delivery on select products, allowing Amazon to control distribution of the vendor products. (Decl. of Jesse Cohen, Ex. F) (We offer guaranteed delivery on certain fast delivery speeds and select products). Finally, although not an explicit guarantee, the Amazon Choice feature may operate as such in the eyes of a reasonable online shopper, who but for Amazon's recommendation, would have purchased another product. Hence, even if Amazon is not found to be a merchant with respect to headlamps, the court should still find that the implied warranty of merchantability applies.

The implied warranty of merchantability implies in very contract for sale that goods are of fair average quality within the description and are fit for the ordinary purposes for which such goods are used. Md. Code Ann., Com. Law § 2-314. The relevant good here (i.e. the headlamp) was not in "fair average quality" because it was defective and such defect resulted in a residential fire. Similarly, the headlamp was not fit for its ordinary purposes because had it been put to ordinary use (i.e. worn on the user's head), the defect would have caused death or serious bodily injury to the user.

24

### ii. As a seller of "consumer goods" Amazon cannot disclaim any implied warranties

Amazon seeks to shield itself from liability by disclaiming any implied warranties. (Decl. of Joseph Smith, ECF No. 45, at 4.) Maryland permits the disclaimer of an implied warranty of merchantability by language which mentions merchantability and which, is conspicuously written. Md. Code Ann., Com. Law § 2-316. One may not; however, disclaim any implied warranties for "consumer goods." Md. Code Ann., Com. Law § 2-316.1. Maryland courts have held that goods are "consumer goods" if they are used or bought for use primarily for personal, family or household purposes. Anthony Pools, Div. of Anthony Indus., Inc. v. Sheehan, 295 Md. 285, 289 (1983). In Sheehan, the court held that a diving board constituted a consumer good. id. at 298 (the diving board which Anthony sold to the Sheehans as part of the swimming pool construction contract carried an implied warranty of merchantability under CL § 2-314. Anthony's contractual disclaimer of that warranty was ineffective under CL § 2-316.1). Based on the aforementioned illustration, Maryland courts seem to interpret "consumer goods" broadly. Surely if a diving board is considered to be a consumer good because of its use for personal, family, or household purposes, then so would the plaintiff's purchase of a headlamp in the case at bar. Therefore, the court should find that Amazon's sale of the headlamp constitutes a sale of a consumer good for which Amazon cannot disclaim any implied warranties.

### IV. CONCLUSION

Amazon sold and/or distributed the headlamp that caused the fire and resulting damage to Plaintiff's property. Under Maryland law and the Communications Decency

25

Act, Amazon should be treated as a seller and an internet content provider, and therefore the Plaintiff's negligence and breach of warranty claims should not be barred. Further, the Plaintiff is not seeking to hold Amazon liable for the act of publishing, but rather for actually selling the defective headlamp and causing the resulting injury. Therefore, the protections of Section 230 should not apply to Amazon. Accordingly, the Court should deny Amazon's Motion for Summary Judgment, and allow the case to proceed to oral argument.

SACKS-WESTON DIAMOND, LLC

Jesse M. Cohen, Esq.
*Admitted Pro Hac Vice*
1845 Walnut Street
Suite 1600
Philadelphia, PA 19103
P: (215) 925-8200
F: (267) 639-5422
jcohen@sackswestondiamond.com

Date: 9/28/17

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of September, 2017 a copy of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff's Request for Hearing, Declaration of Jesse M. Cohen, and Proposed form of Order was filed and served via the court's electronic filing system on the following counsel of record:

> Kelly M. Lippincott, Esquire
> Joseph A. Smith, Esquire
> Carr Maloney P.C.
> 2020 K Street, NW
> Suite 850
> Washington, D.C.  20006
> *Attorneys for Defendant,*
> *Amazon.com Inc.*

_____
/s/
Jesse M. Cohen, Esquire