UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| ERIE INSURANCE a/s/o,<br>Minh Nguyen and Anh Nguyen,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>eBAY, INC., et al.,<br><br>　　　　　　　Defendants. | No. 8:16-CV-02679-PX<br><br>**AMAZON'S REPLY IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT............................................................................................................. 2

        A.     Amazon is not a seller under Maryland Law ......................................... 2

        B.     The CDA bars Plaintiff's claims............................................................ 7

        C.     The warranty claims fail because Amazon did not sell the headlamp ................. 12

III.    CONCLUSION....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

CASES

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...............................................................................................9

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) .............................................................................................12

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ...............................................................................................10

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .............................................................................................11

*Gentry v. eBay, Inc.*,
99 Cal. App. 4th 816 (2002) ...............................................................................8, 9, 10, 12

*Gibson v. Craigslist, Inc.*,
No. 08 Civ 7735, 2009 WL 1704355 (S.D.N.Y. June 15, 2009)......................................8, 10

*Green v. America Online (AOL)*,
318 F.3d 465 (3d Cir. 2003)...................................................................................................9

*Inman v. Technicolor USA, Inc.*,
2011 WL 5829024 (W.D. Pa. 2011) .....................................................................................10

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)...............................................................................................8, 10

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) .............................................................................................8

*McDonald v. LG Elecs. USA, Inc.*,
219 F. Supp. 3d 533, 542 (D. Md. 2016)..............................................................1, 2, 10, 13

*Milo & Gabby LLC v. Amazon.com, Inc.*,
693 F. App'x 879 (Fed. Cir. 2017) ................................................................................2, 6, 13

*Morris v. Osmose Wood Preserving*,
340 Md. 519 (1995) ................................................................................................................5

*Nath v. Nat'l Equip. Leasing Corp.*,
439 A.2d 633 (Pa. 1981) .........................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...................................................................................11

*Stiner v. Amazon.com, Inc.*,
    No. 15CV185837, Ct. of C.P., Lorain Cty., Ohio (Sept. 20, 2017)................................. passim

*Stoner v. eBay, Inc.*,
    No. 305666, 2000 WL 1705637 (Cal. Super. Ct. Nov. 1, 2000) ..........................................8, 9

**STATUTES**

Md. Code Ann., Cts. & Jud. Proc. § 5-405 ...............................................................................2, 4

Md. Com. Code § 2-314(1)........................................................................................................4, 13

Md. Com. Law § 2-106(1) ..........................................................................................................4, 5

Md. Com. Law § 2-313(2) ...........................................................................................................12

## I.   INTRODUCTION

There is no dispute that Dream Light owned the headlamp, developed the product offer, set the price, and transferred title directly to Trung Cao. In defining a sale as the transfer of title, Maryland law establishes ownership of the product as an easy way to identify the seller—Dream Light in this transaction. Plaintiff nevertheless asks the Court to treat Amazon as the seller based on providing an online marketplace and logistics services. It cites no legal support for such a broad expansion of liability to service providers, and there is none.

Plaintiff seizes on the term "middleman" in the Commercial Code and an unrelated dictionary definition to argue that a seller is anybody who helps a buyer and seller meet. The text and history of the relevant provision provide no support for this interpretation. Nor does the definition of "seller" in the sealed container statute, which directly addresses seller liability for product defects. As this Court recognized in *McDonald*, Maryland law does not extend liability to entities like Amazon who provide an online marketplace for buyers and sellers to make sales. That result comports with common sense and basic fairness. Many entities facilitate sales: advertisers direct buyers to sellers; malls and marketplaces provide physical or online places for merchants to display and sell goods; financial intermediaries enable payments; and logistics providers store and ship goods. These entities have never been considered sellers, and Plaintiff provides no justification for doing otherwise now.

The conduct that Plaintiff attacks is allowing Dream Light to offer a product on the Amazon.com marketplace. That conduct does not constitute selling under Maryland law or any reasonable understanding of the term. Publishing Dream Light's product offer on the website is also protected by the Communications Decency Act (CDA). These two grounds each independently warrant summary judgment dismissing all of Plaintiff's claims.

## II.    ARGUMENT

### A.    Amazon is not a seller under Maryland Law

Plaintiff does not cite a single case holding a service provider liable as a seller. It makes no effort to distinguish the *McDonald* case, where this Court held that "Amazon's role as the 'platform' for the third-party sales does not qualify it as a merchant or a seller under Maryland's UCC." *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 542 (D. Md. 2016). And it does not mention the *Milo & Gabby* case, where the Federal Circuit held that Amazon is not a seller because the "third-party sellers retain title to the pillowcases at all times and Amazon … merely provides an online marketplace followed by logistical and shipping services after the third-party seller has completed its transaction with a buyer." *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 890 (Fed. Cir. 2017).

Plaintiff also does not address the cases discussed in Amazon's motion holding that marketplace providers are not liable for defects in products sold by third parties. (Amazon.com, Inc.'s Motion for Summary Judgment (Sept. 15, 2017), Dkt. No. 45 ("Amazon Mtn.") at 11-14) Now there is another case directly on point, which Plaintiff could not have addressed because it was issued subsequent to Amazon filing its motion. Two weeks ago, an Ohio court granted Amazon summary judgment in *Stiner v. Amazon.com, Inc.*, No. 15CV185837, Ct. of C.P., Lorain Cty., Ohio (Sept. 20, 2017) (opinion attached as Ex. A). The plaintiff in that case claimed that Amazon was liable as a "supplier" after his teenage son died from ingesting too much caffeine powder bought from a third party on the Amazon marketplace. Ohio's product liability statute defines "supplier" as an entity that "sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce." *Id.* at 7. That language is broader than the definition of "seller" in Maryland's sealed container statute. Md. Cts. & Jud. Proc. Code § 5-405. The court recognized that Amazon's role was "providing an

online forum for the seller, Defendant Tenkoris, to peddle its caffeine powder." *Id.* at 9. As such, Amazon "as a matter of law" was "not a supplier and did not otherwise participate in the placing of the caffeine powder in the stream of commerce." *Id.* at 10.

The court cited several features of the relationship between Amazon and the third-party seller that apply equally here. "Tenkoris was the seller that uploaded the specific product and all related information to Amazon's website," and the "seller's agreement between Amazon and Tenkoris indicated that Tenkoris was the seller and responsible for the products it uploaded on the Amazon marketplace." *Id.* at *8, 11. The information in the product offer "originated from the [third-party] seller," even though Amazon created the template for uploading the product information to the marketplace. *Id.* at *11 (emphasis original). The third-party seller "set the price, created the product descriptions, selected and uploaded the product images and all other information pertinent to the product listing." *Id.* Even though Amazon's services assisted third parties to make a sale, at "all times, Defendant Tenkoris was the seller of the Hard Rhino Pure Caffeine Powder." *Id.* So too here with respect to Dream Light.

Lacking legal support, Plaintiff argues that "Amazon has direct control over a multitude of ordinary business decisions that are ordinarily those of a seller." (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Sept. 28, 2017), Dkt. No. 46 ("Pl. Opp.") at 3) But the facts it cites in support of its seller argument boil down to the following, and do not create a genuine issue of material fact:

- Amazon requires third-party sellers to assent to the *Business Solutions Agreement*. (Pl. Opp. at 1, 8)

- The *Business Solutions Agreement* includes a licensing provision on intellectual property rights. (Pl. Opp. at 1, 9-11)

- Amazon processes payment and remits money to the third-party seller, minus service fees for the transaction. (Pl. Opp. at 1)

- Amazon has possession of, and is responsible for shipping, products sold by sellers who participate in the Fulfillment by Amazon (FBA) program, and Amazon handles customer service issues relating to shipment and packaging. (Pl. Opp. at 11-12)

Plaintiff does not tie these facts to Maryland's definition of seller, which is a "wholesaler, distributor, retailer, or other individual or entity other than a manufacturer that is regularly engaged in the selling of a product whether the sale is for resale by the purchaser or is for use or consumption by the ultimate consumer." Md. Cts & Jud. Proc. Code § 5-405(a)(5). The only entity that fits this definition is Dream Light, which sourced the headlamp from the manufacturer or upstream distributor, owned the headlamp, developed the product offer, set the price, and transferred title to Cao. Plaintiff does not dispute that Dream Light retained title and transferred it directly to Cao, which is particularly important in light of Maryland's definition of a sale as entailing the transfer of title. Md. Com. Law § 2-106(1).

Plaintiff sidelines the sealed container statute, stating that its definition of "seller" is for "purposes of product liability actions arising in foreign jurisdictions." (Pl. Opp. at 7) The statute contains no such limitation. Its definition of "seller" is most relevant because the statute directly addresses the liability of sellers for product defects.

Plaintiff then tries to squeeze Amazon into the definition of a "distributor" or "middleman" in the Commercial Code. It uses a dictionary definition of "middleman" to expand the concept of seller to entities who "bring two parties together and permit them to make their own bargain." (Pl. Opp. at 8-9). The statutory text and history refute Plaintiff's interpretation. As for the text, "middleman" modifies "wholesaler"; it is not an independent category intended to encompass any entity that facilitates a sale. Md. Com. Law § 2-314(1)(a) ("'seller' includes the manufacturer, distributor, dealer, *wholesaler or other middleman* or the retailer") (emphasis added). Wholesalers and the other categories listed are those traditionally understood to hold and

convey title in the distribution chain, consistent with the Code's definition of "sale" as the "passing of title from the seller to the buyer for a price." Md. Com. Law § 2-106(1). As for history, this provision was intended to eliminate the vertical privity requirement by allowing the ultimate buyer to sue intermediate sellers in the distribution chain for implied warranty. *Morris v. Osmose Wood Preserving*, 340 Md. 519, 545 (1995). It was not intended to expand seller liability to anybody who happens to introduce a buyer to a seller. Expanding seller liability would conflict with the Legislature's clear intent, embodied in the sealed container statute, to restrict liability for sellers. All of these considerations indicate that "middleman" is a synonym for "wholesaler," not a whole new category intended to expand seller liability to service providers who facilitate transactions.

The facts that Plaintiff relies on establish no more than that Amazon provided an online marketplace for willing buyers and sellers to transact business, and related services such as payment processing and logistics. Service providers routinely have contracts dictating the terms of their services and outlining the parties' relationship. Here, the *Business Solutions Agreement* (BSA) establishes that the third-party, Dream Light, is the seller. It requires, for example, that Dream Light source its own products, be responsible for any defect or recall of its products, and ensure that its products comply with all applicable laws. (Amazon Mtn. at 5)

Plaintiff misconstrues the license provision in subsection 4 of BSA in suggesting that Amazon controls third-party sellers' products. (Pl. Opp. at 9-11) That provision appears in the first section of the BSA, which applies to all services that Amazon provides, including things like web services that typically involve intellectual property rights. It gives Amazon a license to "use, reproduce, perform, display, distribute, adapt, modify, re-format, create derivative works of, and otherwise commercially or non-commercially exploit in any manner, any and all of Your

Materials," which are defined as information provided by the third party. (Declaration of Joseph A. Smith in Support of Amazon.com., Inc.'s Motion for Summary Judgment (Sept. 15, 2017) Dkt. No. 45-2, ¶ 2, Ex. A (BSA), at p. 3)  The provision nowhere mentions "Your Product," which is "any product or service" that the third party offers through Amazon's services. (*Id.* at 15-16) The "Selling on Amazon Service Terms" portion of the BSA applies to the "Service that allows [the third party] to offer certain products and services directly on the Amazon Sites," and those terms place responsibility for the product squarely on the third-party seller. (*Id.* at 17-24; Amazon Mtn. at 5)

Contrary to Plaintiff's characterization, the FBA program does not place "Amazon directly in the role of a seller by allowing Amazon to control the distribution of vendor products." (Pl. Opp. at 12) FBA consists of logistics services that Amazon provides third-party sellers, even if the seller makes a sale through an online channel other than Amazon.com, and the seller has title to its products. (Amazon Mtn. at 6) Amazon's FBA program is not materially different from a warehouse provider or a shipper like Federal Express—entities that possess but do not own the product, and facilitate distribution yet are not treated as sellers of the products they handle. The Federal Circuit in the *Milo & Gabby* case addressed whether a third-party seller's "use of Amazon's fulfillment service" makes Amazon a seller, and saw "no difference in Amazon's status in that context." *Milo & Gabby,* 693 F. App'x at 886. The court's rationales apply equally here: Amazon "never held title" to the products, Amazon "could not sell the product on its own," and the third-party seller "could request that Amazon return the product to the third-party seller at any time." *Id*. Plaintiff ignores the cases discussed in Amazon's motion that hold logistics providers are not sellers. (Amazon Mtn. at 13)

Finally, processing payment does not transform Amazon into a seller. All non-cash transactions include an entity that processes payments. Visa and MasterCard process payments and extend credit, and banks process debit transactions and checks. Entities that provide financial services to support a sale are not themselves sellers. *See, e.g.*, *Nath v. Nat'l Equip. Leasing Corp.*, 439 A.2d 633, 636 (Pa. 1981) (even though the financier can be perceived to have participated in the delivery of the product, such a "tangential participation in the supplying of goods does not justify the imposition of strict liability").

## B.   The CDA bars Plaintiff's claims

Plaintiff makes two main arguments against CDA immunity: (1) Amazon was the seller or otherwise engaged in conduct beyond publication; and (2) Amazon was a content developer. These arguments attempt to obscure the basic fact that Plaintiff is trying to make Amazon liable for Dream Light's sale of a product on Amazon.com—a sale that occurred only because Dream Light posted its product offer on the site. Plaintiff cites no cases holding a website operator liable for a third-party offering a product or service online, because there are none. To the contrary, well-established law refutes each of its arguments.

### 1.   Plaintiff's claims arise from publication of the Dream Light offer, not independent conduct.

Plaintiff characterizes its claims as attacking Amazon's own conduct and "seeks to treat Amazon as the seller and/or distributor of a defective headlamp that ultimately led to a devastating fire, rather than just a website that allowed for the posting." (Pl. Opp. at 18) But Amazon did not sell the headlamp, as it showed in section III.A of its Motion and section II.A of this brief. Plaintiff's argument exposes what its claim is really about—putting Amazon in the shoes of Dream Light. The only link between Dream Light, the headlamp, Trung Cao, and Amazon is the product offer that Dream Light wrote and posted on Amazon.com. Regardless of

how Plaintiff styles its claims, they all turn on Amazon's publication of that posting, which is precisely what CDA immunity addresses.

More broadly, Plaintiff cannot evade the CDA by simply identifying actions ancillary to the third-party's content. Every website operator takes such actions, such as accepting payment for publishing third-party content, determining the conditions of accessing it, restricting use of the content to the site, and organizing search results in a useful way. These actions ancillary to publication do not defeat CDA immunity. Thus, for example, the CDA bars claims even though the website operator:

- Provided a venue for third party sellers and made money from those sales. *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833 (2002) (CDA bars claims based on third-parties' sale of sports memorabilia on eBay's online marketplace); *Gibson v. Craigslist, Inc.*, No. 08 Civ 7735, 2009 WL 1704355, at *3 (S.D.N.Y. June 15, 2009) (CDA bars claim for sale of gun on Craigslist's online marketplace); *Stoner v. eBay, Inc.*, No. 305666, 2000 WL 1705637, at *1 (Cal. Super. Ct. Nov. 1, 2000) (CDA bars claim against eBay despite allegation that it "developed a method of operation that allows it to knowingly reap massive profits from the sale of bootleg and other unauthorized 'infringing' sound recordings").

- Provided payment services that facilitated the transaction or contributed to the harm alleged. *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016) (CDA barred claim even though website operator may have contributed to illegal sex trafficking with its anonymous payment for postings); *Stoner*, 2000 WL 1705637, at *2 (providing escrow and payment services, even for an additional fee, does not affect CDA analysis).

- Had standards governing the content. *Jane Doe No. 1*, 817 F.3d at 20 (holding that section 230 "extends to the formulation of … website policies and practices").

- Controlled the user experience and what content is displayed. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (finding Facebook entitled to CDA immunity even though it controls the contents posted on its website).

- Provided user guideposts such as "logos, category headings and seller ratings." *Stoner*, 2000 WL 1705637, at *1.

- Advertised and promoted its service to users. *Stoner*, 2000 WL 1705637, at *2 ("neither aggressive advertising nor the imposition of a fee—including a fee

based in part on the price at which an item is sold—transforms an interactive service provider into a seller responsible for items sold").

- Provided insurance or other buyer protection for items sold on the site. *Stoner*, 2000 WL 1705637, at \*2 ("Providing limited insurance for all items auctioned over its service may encourage buyers to use the service, but does not make eBay the seller.").

The proper inquiry focuses, rather, on the duty that Plaintiff alleges was breached. Courts "must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

Plaintiff's claims are based on Amazon allowing third parties to post offers for purportedly unsafe products on its website, or its failure to remove those postings. Just as the "fundamental tort claim" in an America Online case asserted that AOL "was negligent in promulgating harmful content and in failing to address certain harmful content on its network," Plaintiff attempts to hold Amazon "liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003). The CDA "specifically proscribes liability in such circumstances." *Id.* (internal quotation marks and citation omitted).

Like Plaintiff here, many others have tried to evade the CDA by rooting the alleged duty in actions separate from publication, with no success. The plaintiff in the *Stiner* case alleged that Amazon was liable for caffeine powder sold by a third party, and the court held that the CDA was an additional reason to grant Amazon summary judgment because the plaintiff sought "to hold Amazon liable … for the dissemination of Defendant Tenkoris' content." *Stiner*, at 17. In *Gentry v. eBay*, the plaintiffs asserted an "independent duty" to provide a warranty for sports memorabilia sold on the site. 99 Cal. App. 4th at 831. The court recognized that plaintiffs "ultimately seek to hold eBay responsible for conduct falling within the reach of section 230,

namely, eBay's dissemination of representations made by the individual defendants, or the posting of compilations of information generated by those defendants and other third parties." *Id.* The court reasoned that plaintiffs sought to put eBay "in the shoes" of the third-party sellers, "making it responsible for their publications or statements." *Id.* at 832-33. The CDA barred the claims. *Id.* at 833; *see also Jane Doe No. 1*, 817 F.3d at 20 (plaintiffs' characterization of their allegations as "an affirmative course of conduct" by provider of online escort service "comprises more cry than wool"); *Gibson*, 2009 WL 1704355, at *3-4 (allegations that Craiglist is liable "as a business" for third party's gun sale are "directed toward Craigslist as a 'publisher' of third party content"); *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *5, 7 (W.D. Pa. 2011) ("sales made by third parties are considered information for purposes of the CDA," despite plaintiff's assertion that his claims were "based on eBay's direct conduct") (internal punctuation omitted).

Framing the duty as failing to act produces the same result. In *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), the plaintiff characterized her claims as "predicated solely on MySpace's failure to implement basic safety measures to protect minors." *Id.* at 419. The court saw through this argument as "merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content." *Id.* at 420.

Plaintiff devotes much of its brief to this Court's discussion of the CDA in the *McDonald* case. (Pl. Opp. at 17-21) The CDA issue arose on a motion to dismiss, so this Court had to take as true plaintiff's allegations that Amazon engaged in tortious conduct apart from publication. Here, on summary judgment, Plaintiff must establish, not just allege, tortious conduct *independent of publishing functions*. It has not done so.

### 2.    Amazon was not a content developer.

Plaintiff does not dispute that Dream Light developed the content of its product offer. It argues instead that Amazon is a content developer because it produces content, such as recommendations, relative to some unspecified products. But Plaintiff ties no such content to the sale at issue here, which dooms the argument.

The various content Plaintiff points to amount, in the aggregate, to directing the attention of website users to certain products listed there. (Pl. Opp. at 16) This argument misses the point. Curating, organizing, or recommending third-party content does not equate to creating that content, as the Fourth Circuit pointed out in *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The plaintiff in that case argued that the website operator developed content by virtue of controlling the "structure and design of its website" or by soliciting complaints and "steering [them] into a specific category designed to attract attention by consumer class action lawyers." *Id.* The court held that the website operator was not a content developer and the claims were barred. And in *Stiner*, the court held the CDA barred plaintiff's claims even though Amazon's search algorithms led the buyer to the caffeine powder. *Id.* at 2.

Plaintiff's argument misses the point for another reason: it does not tie any alleged Amazon content to Cao's purchase of the headlamp. The *Roommates.com* case that Plaintiff relies on recognizes that a "website may be immune from liability for some of the content it displays to the public but be subject to liability for other content." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162-63 (9th Cir. 2008) It does *not* suggest that creating some content abrogates immunity in general. Moreover, the Fourth Circuit has frowned on that case so it should not be stretched in the manner Plaintiff suggests. *See Nemet*, 591 F.3d at 257 ("we do not find *Roommates.com* persuasive because it is fundamentally

distinguishable and the facts pled here do not show Consumeraffairs.com developed the content of the posts by the structure and design of its website").

The *Carafano* district court case that Plaintiff also relies on is even less helpful. Plaintiff neglected to mention that the Ninth Circuit overturned the district court's decision on the CDA point. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). Unlike the district court, the Ninth Circuit concluded that the matchmaking service "is statutorily immune." *Id.* at 1120-21. The court wrote that the CDA bars claims unless the website provider "created or developed the *particular content at issue*," something Plaintiff has not endeavored to prove here. *Id.* at 1125 (emphasis added). Relevant to Plaintiff's "Amazon choice" argument, the court discussed the eBay customer rating system at issue in the *Gentry* case, which used a color-coded symbol to designate sellers who had received certain levels of positive feedback and provided a "Power Sellers" endorsement based on sales volume and positive feedback. *Id.* at 1124. The court quoted with approval the *Gentry* court's holding that compiling information from third parties did not transform eBay into a content provider. *Id.*.

**C.   The warranty claims fail because Amazon did not sell the headlamp**

Plaintiff cites no express warranty, because Amazon did not make one. It argues that guarantees can create an express warranty or support an implied warranty, but immediately concedes that "Amazon does not expressly guarantee the quality of any product," which negates its own premise. (Pl. Opp. at 24) The statements Plaintiff cites about the in-stock, delivery, or choice status of various unidentified products do not constitute a warranty, even if Plaintiff could tie any such statement to Dream Light's sale of this headlamp. (Pl. Opp. at 24) The reason is an "affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Md. Com. Law § 2-313(2).

Lacking an express warranty, Plaintiff relies on the implied warranty of merchantability, which would apply only to the actual seller of the headlamp, Dream Light. (Pl. Opp. at 22-23) As the Commercial Code makes clear, "a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller* is a merchant with respect to goods of that kind." Md. Com. Law § 2-314(1) (emphasis added). It does not apply to non-sellers or service providers. As this Court pointed out in *McDonald*, "Amazon's role as the 'platform' for the third-party sales does not qualify it as a merchant or a seller under Maryland's UCC." 219 F. Supp. 3d at 542. Plaintiff's argument that there are "pages upon pages of headlamps for sale by various vendors" is misdirected. (Pl. Opp. at 22) Sales by other vendors may create an implied warranty by those sellers, but do nothing to make Amazon a seller of the headlamp at issue.

### III.   CONCLUSION

Providing a place for somebody to make a sale does not make one a seller, as this Court held in *McDonald* and cases from other jurisdictions like *Stiner* and *Milo & Gabby* recognize. Plaintiff offers no authority to the contrary. Maryland law does not extend liability to service providers like Amazon, and the CDA bars any attempt to do so. The Court therefore should grant Amazon summary judgment dismissing all of Plaintiff's claims.

Dated:  October 12, 2017                            AMAZON.COM, INC.
                                                   By Counsel

                                                   CARR MALONEY P.C.


                                  By:    */s/Joseph A. Smith*
                                         Kelly M. Lippincott, Esquire
                                         Joseph A. Smith, Esquire
                                         2020 K Street, NW
                                         Suite 850
                                         Washington, D.C. 20006
                                         (202) 310-5500 (Telephone)
                                         (202) 310-5555 (Facsimile)
                                         kml@carrmaloney.com
                                         jas@carrmaloney.com

-13-

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of October 2017 a true and correct copy of the foregoing ***Amazon's Reply in Support of Motion for Summary Judgment*** was filed and served through the Court's CM/ECF System on:

> William H. Murphy, III, Esq.
> Nikoletta S. Mendrinos, Esq.
> 1 South Street
> 23rd Floor
> Baltimore, MD 21202
> Hassan.murphv@murphyfalcon.com
> nikoletta.mendrinos@murphyfalcon.com
>
> and
>
> Jessie M. Cohen, Esq.
> Sacks Weston Diamond, LLC
> 1845 Walnut Street
> Suite 1600
> Philadelphia, PA 19103
> jcohen@sackswestondiamond.com
> ***Counsel for Plaintiff***

> /s/Joseph A. Smith
> Joseph A. Smith

-14-