# EXHIBIT A

**ORIGINAL**



# LORAIN COUNTY COURT OF COMMON PLEAS
## LORAIN COUNTY, OHIO

**TOM ORLANDO, Clerk**
**JOURNAL ENTRY**
**John R. Miraldi, Judge**

Date _____9/20/17_____          Case No. __15CV185837__

DENNIS STINER                          EDWARD S JERSE
_____          _____
Plaintiff                              Plaintiff's Attorney    (216)522-9000

              VS

AMAZON.COM INC                         BRENDAN  MURPHY
_____          _____
Defendant                              Defendant's Attorney    (206)359-6170

### ENTRY AND ORDER ON AMAZON DEFENDANTS' MOTION
### FOR SUMMARY JUDGMENT
### and
### PLAINTIFF DENNIS STINER'S MOTION
### FOR SUMMARY JUDGMENT

This cause came to be heard upon the Amazon Defendants'[1] Motion for Summary Judgment and Plaintiff Dennis Stiner's Motion for Summary Judgment. Both sides have filed briefs opposing the other's motion as well as reply briefs.

**Amazon Defendants' Motion for Summary Judgment**

Amazon seeks summary judgment on each count of Plaintiff's Second Amended Complaint, which as to said defendants contains the following counts: 1) violation of Ohio's Food & Drug Safety Act (OFDSA) – prohibited acts, adulterated drugs, unapproved new drugs; 2) violation of OFDSA – misbranded drugs; 3) violation of OFDSA – adulterated dietary supplement; 4) Strict Products Liability – design defect; 5) Strict Products Liability – Inadequate Warning; 6) Strict Product Liability – non-conformance with representations; 7) Supplier Liability – negligence; 8) Breach of UCC

---

[1] The court's reference to the "Amazon Defendants" herein include: Amazon.com, Inc., Amazon Fulfillments Services, Inc., Amazon Web Services, Inc. and Amazon Services, LLC.

1



– implied warranty of merchantability;[2] 11) Conscious, Intentional Acts – Punitive Damages; and, 12) Fraud.

## Factual Background

Plaintiff's claims arise from the tragic death of his son, Decedent Logan Stiner on May 17, 2014 as a result of a cardiac arrhythmia and seizure due to acute caffeine toxicity due to excess caffeine ingestion.[3] The decedent obtained a product called Hard Rhino Pure Caffeine Powder from a high school classmate, Defendant Kelsey Kidd. Kidd testified that she was searching Amazon.com for pre-work out products. See, Kidd Deposition at 12. Products on the Amazon Marketplace could be sold directly by Amazon, sold by a third party seller, shipped by Amazon, sold and shipped by a seller, or could be merely ads.[4]

While searching the marketplace, Amazon's search algorithms suggested a *number* of products which Kidd might like. Id. at 58-59. Included in those suggestions was a powdered caffeine product, Hard Rhino Pure Caffeine Powder, from a company named "The Bulk Source." Id. at 54-56. On the Amazon web page, the caffeine powder was identified as being "Sold by TheBulkSource." See, Kidd Deposition, Exhibit 4. The customer order page indicated that the caffeine powder was both sold and the order fulfilled by TheBulkSource. Id., Exhibit 3. In no less than three places, the purchase order generated as a result of the sale indicated that the order and purchase was made from TheBulkSource. See, Amazon's motion, page 4.

Kidd placed her order for the product, 500 grams for $14.99 and $5.49 for shipping. Id., at 18. Kidd paid for the product using an Amazon gift card and her mother's Visa. Id at 20-21. Kidd was not sure that she purchased the Hard Rhino product solely because the Amazon site suggested it. Id. at 22. Kidd made her own choice in purchasing the Hard Rhino product from a number of suggested products made by Amazon. Id. at 22, 57.

At Logan Stiner's request, Kelsey Kidd poured some of the caffeine powder into a Ziploc bag and gave it to the decedent. Id. at 36-37. Kidd never showed the decedent the Tenkoris label or packaging. Id. at 80. However, she did advise him that 1/8 of a teaspoon of the caffeine powder was 100 mg of caffeine, equivalent to about 16 oz. of coke and ¼ teaspoon of the powder was about 40 mg. of caffeine - more than a

---

[2] Counts 9 and 10 were directed toward Defendant Kelsey Kidd who is no longer a party to this case.

[3] Coroner's Verdict, Stephen B. Evans, M.D.

[4] See, Rachel Greer Deposition, at 34. This case involves an item sold and shipped by third party seller, Tenkoris. Greer also testified that Amazon is a retailer where Amazon.com is selling the product, but the Amazon Marketplace also allows other sellers to retail their own products. Id. 47. Greer also testified, "In the context of a marketplace, the way that a marketplace operates is as an independent platform for everyone to use. It's a technology platform." Id. 111-112.

2



monster or rock star energy drink.  Id., Exhibit 2.  Kidd told the decedent that she used "usually 1/8 teaspoon and after school another 1/8 and my pre-workout has 400 mg." Id. The decedent asked again how much an eighth of a teaspoon was and she again advised it was 100 mg.  Id.  Although the actual amount of Hard Rhino Pure Caffeine Powder that the decedent ingested is disputed, the dose appears to have been substantially more than what Kidd advised and was unquestionably fatal.

The Hard Rhino Pure Anhydrous Caffeine Powder (100 Percent USP Pharma Grade) purchased by Kidd was sold by TheBulkSource. TheBulkSource was an Amazon storefront owned by Tenkoris, LLC and through which Tenkoris sold its Hard Rhino products. See, Ken Olcher Depo. at 38-39.  Tenkoris sold its products not only on Amazon but also on other selling platforms such as eBay and through its own website. Id. 10-19, 72.  Olcher testified that Tenkoris sold "products on the platform that Amazon provides."  Id. 24.  Olcher described Tenkoris' actions with regard to product listings as "we uploaded product information onto your [Amazon's] computers for sale on the Amazon platform."  Id. 25.  The only identifier added to the product by Amazon was an Amazon Standard Identification Number (ASIN).  Greer Depo. at 37, Damon Jones Depo. at 75.

The Amazon listing for Tenkoris' caffeine powder was uploaded by Tenkoris using a template created by Amazon and which Olcher described as a "flat file format upload template."  Id. 36.  Data entered by Tenkoris included the product name, description, related images, product details, price, quantities, unit measures, dimensions, among other things.  Id. 36-37.

Olcher described the order/fulfillment process as:

> A.   Roughly, a Amazon customer searches for a product that he or she would like. If they agree that this is the product that they want, they select a seller of that product and they purchase the product.  At that point, from my understanding – I don't know what the back end is on Amazon, but we are notified through a digital or electronic download that a product was sold by Amazon, or you know, a customer purchased it, however, you want to put it, and the transaction number has been provided, and shipping particulars have been provided, and selling price has been provided, and some other customer information has been provided.  And then it is up to us to fulfill that order, and we do.  And then after that order is fulfilled, meaning shipped, tracking information is uploaded up to Amazon service, which it – which – who then – or Amazon who then notifies the customer of the pending shipment.

Id. 32-33.

3





Ken Olcher testified that Tenkoris would order the caffeine powder from a distributor who would deliver the bulk powder to Tenkoris. Id. 42-43. After clearing Tenkoris' quarantine and testing to ensure the product was what Tenkoris ordered, it was released to Tenkoris' general inventory. Id. The product was then taken into a separate room where it is bagged and the labels attached. Id. 46.

At least as it concerns the caffeine product in this case, Amazon never had possession of the product and never physically touched the product. Id. 50. Olcher testified:

> Q.   And in this instance the Caffeine Powder – Hard Rhino Pure Caffeine Powder that was sold to Kelsey Kidd by Tenkoris, it was never sent to Amazon?
>
> A.   No. We fulfilled directly from Tenkoris.
>
> Q.   And Amazon did not package Hard Rhino Pure Caffeine Powder, correct?
>
> A.    No, they did not.
>
> Q.   And Amazon did not label Hard Rhino Pure Caffeine Powder, correct?
>
> A.   No, they did not.
>
> Q.   Amazon did not ship the Hard Rhino Pure Caffeine Powder at issue in this case to Kelsey Kidd, did it?
>
> A.   No, they did not.

Id. 51. When questioned further, Olcher testified:

> Q.   And Amazon never had possession of the Hard Rhino Pure Caffeine Powder that Tenkoris supplied to Ms. Kidd, did it?
>
> MR. GRIECO: Objection.
>
> THE WITNESS: How do you define supplied? It is up to, you know, legal interpretation, but I know where you're going with it. So I would say no, they did not. It was Amazon, excuse me. Tenkoris had supplied it.

Id. 88-89. At the time Kelsey Kidd purchased the caffeine powder, there was no FDA or state regulation prohibiting the sale of bulk pure caffeine powder. Id. at 134.





Defendant Tenkoris was selling its products on Amazon.com under an Amazon Services Business Solutions Agreement. See, Amazon's Motion for Summary Judgment, Exhibit C. Specifically, under the Selling on Amazon Service, Tenkoris agreed:

> **S-2.1 Sale and Fulfillment.** Other than as described in the Fulfillment by Amazon Service Terms (if applicable to you) you will: (a*) source, sell, fulfill, ship and deliver your Seller-Fulfilled Products * * * in each case in accordance with the terms of the applicable Order Information, these Service Terms and the Agreement, and all terms provided by you and displayed on the Amazon Site at the time of the order and be solely responsible for and bear all risk for such activities*; (b) package each of Your Products in a commercially reasonable manner and ship each of Your Products on or before its Estimated Ship Date; * * * (e) ship Your Products throughout Your Elected Country (except to the extent prohibited by Law or this Agreement); * * * (h) *notwithstanding any other provision of these Service Terms, ensure that you are the seller of all products made available for listing for sale hereunder*; (i) include an order specific packing slip, and, if applicable, any tax invoices, within each shipment of Your Products; (j) identify yourself as the seller of the product on all packing slips or other information included with Your Products and as the Person to which a customer may return the applicable product; * * * (Emphasis added.)

See, Exhibit C to Amazon's Motion for Summary Judgment. This same agreement defines "Your Product" as "any product that is made available for listing for sale, offered for sale, or sold by you through the WebStore Service or the Selling on Amazon Service * * *." Id.

**The Summary Judgment Standard**

In *Ponder v. Culp*, Summit App. No. 28184, 2017 WL 192609 (9th Dist., 2017), the Ninth District Court of Appeals set forth the standard to be applied when ruling on a motion for summary judgment:

> Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, however, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358–359 (1992).

> Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the party moving for summary judgment must first

5





be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

Amazon has moved for summary judgment on all of Plaintiff's claims in the second amended complaint.

### Ohio Products Liability Act Claims

### a. Manufacturer Liability

Counts Four through Seven of Plaintiff's second amended complaint are claims brought under Ohio's products liability statutes.  Counts Four through Six are claims which apply directly to manufacturers (design defects, inadequate warning and non-conformance with representations). The OPLA defines a "manufacturer" as:

> "Manufacturer" means a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product.

See, R.C. §2307.71(A)(9).  Amazon, which never had possession or control over the caffeine powder, did none of these things.  Rather it was Defendant Tenkoris and/or CSPS Pharmaceutical Co., Ltd. that performed these functions relative to the caffeine powder. Because Amazon is not a "manufacturer" of the caffeine powder at issue in this case,   Counts Four through Six do not apply to Plaintiff's claims against Amazon.

Despite this, Plaintiff argues that Amazon may be held liable as a "manufacturer" under R.C. §2307.78 which provides in part:

> (B) A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.17 to 2307.77 of the Revised Code and any of the following applies:

6





(1) The manufacturer of that product is not subject to judicial process in this state;

(2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer.

Plaintiff argues that Amazon is liable as a manufacturer because CSPC Pharmaceutical, Inc. is a Chinese company and not subject to process and Defendant Tenkoris is insolvent. However, the court finds that because Amazon is not a "supplier" as further detailed below, this section does not apply to hold Amazon liable as a manufacturer.[5] The court finds that there is no question of fact in this case on this issue and that Amazon has met its initial *Dresher* burden and Plaintiff has failed to meet his corresponding burden of showing the existence of a genuine issue of material fact for trial. Amazon is entitled to summary judgment on Counts Four through Six of the second amended complaint.

### b. Supplier Liability

Count Seven alleges that Amazon is liable under OPLA as a "supplier." The act defines a "supplier" as:

"Supplier" means, subject to division (A)(15)(b) of this section, either of the following:

    (i)    A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;

    (ii)    A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.

(b) "Supplier" does not include any of the following:

    (i)    A manufacturer;

---

[5] The court notes that Plaintiff settled with Defendant Tenkoris prior to it becoming insolvent, and so even if this section applied, Plaintiff did recover from defendant rendering this section inapplicable to Tenkoris. As for CSPC Pharmaceutical, Plaintiff has attached the affidavit of counsel indicating that he has retained the services of First Legal Investigations and has had the Complaint transcribed into Mandarin Chinese and forwarded but has heard nothing pertaining to service. While there may be a question as to whether CSPC is subject to judicial service, this section is inapplicable as the court finds that Amazon is not a supplier.

7





\* \* \* \*

(iv)    Any person who acts only in a financial capacity with respect to the sale of a product, or who leases a product under a lease arrangement in which the selection, possession, maintenance, and operation of the product are controlled by a person other than the lessor. (Emphasis added.)

R.C. §2307.71(A)(15).  Amazon does not meet the definition of a "supplier" under R.C. §2307.71(A)(15)(b)(ii) as it did not install, repair or maintain any aspect of the product that allegedly caused the harm.

With respect to R.C. §2307.71(A)(15)(b)(iv), Amazon was not the "seller" of the caffeine powder.  Rather, Defendant Tenkoris was the seller that uploaded the specific product and all related information to Amazon's website.  Likewise, Amazon was not the entity that distributed, leased, prepared, blended packaged or labeled the caffeine powder. Again, Defendant Tenkoris was the entity that performed these functions. The issue in this case is whether or not Amazon qualifies as a "supplier" for "otherwise participat[ing] in placing the product in the stream of commerce."

Unfortunately, the legislature did not define this phrase or provide examples of how it should be interpreted.  Moreover, the parties have not directed the court to any prior decision from this appellate district (either state or federal) interpreting this section of the statute.  Although plaintiff argues that whether or not Amazon is a seller or supplier is a question of fact, the Ohio Supreme Court has confirmed that undefined words or phrases in a statute present a question of law for the court to decide. *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012 Ohio 5317, 981 N.E.2d 795 (2012) ("[T]he interpretation of undefined terms within a statute is a question of law for the court.") citing *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision,* 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054.  In this regard, a review of cases from other jurisdictions is instructive.

Amazon did not in any way modify the caffeine powder purchased by Kelsey Kidd.  Nor did Amazon distribute the product as the packaging, handling and shipping were performed by Defendant Tenkoris and shipped directly to Defendant Kidd.  Amazon's services -- allowing the product to be uploaded to its marketplace -- were not connected to any aspect of the product which ultimately resulted in the decedent's death.  Any issues with labeling, concentration, instructions, warnings, etc., were aspects of the product are unconnected to the services Amazon performed.

In *Inman v. Technicolor USA, Inc.*, U.S. Dist. Case No. 11-666, 2011 WL 5829024, (W.D. Pa., 2011), the plaintiff sued eBay when he contracted acute mercury poisoning from handing and using vacuum tubes he purchased from the online auction site. Inman's Complaint pled strict products liability claims against eBay for selling,

8





distributing and/or placing the vacuum tubes into the stream of commerce. Inman argued that eBay placed the tubes into the stream of commerce by selling, shipping, distributing and packaging an unreasonably dangerous product, failed to warn of dangers associated with the product and shipped defective products. EBay filed a motion to dismiss the Complaint. In dismissing these claims, the court stated:

> Plaintiff has not set forth any facts demonstrating that eBay acts as anything more than an online forum where sellers such as Tube Zone may peddle their wares to buyers such as Inman. Inman has not pled facts alleging that eBay is so connected to the overall chain of distribution as to suggest a relationship with the manufacturer or product "beyond their immediate sale." * * * Specifically, he has not alleged that eBay, at any time, had anything more than a fleeting connection to the allegedly defective products. He has not alleged that eBay ever had physical possession of the products, that they were moved or stored in a facility owned by eBay, or any other facts to suggest that holding eBay responsible would incentivize safety, that eBay is the only member of the marketing chain available, or that eBay is in a better position than Inman to prevent the circulation of such defective vacuum tubes.

Id. 6. Likewise, Plaintiff has failed to demonstrate that the actions of Amazon <u>in this particular transaction</u>, amounted to anything more than providing an online forum for the seller, Defendant Tenkoris, to peddle its caffeine powder. Amazon never had physical possession of the product, the product was never moved or stored in a facility owned by Amazon. Furthermore, Amazon never fulfilled the sale by labeling, packaging or shipping the product. Plaintiff has failed to provide any evidence that Amazon was so connected to the overall chain of distribution to suggest a relationship with Tenkoris that went beyond their immediate sale.

Plaintiff's brief in opposition makes extensive argument as to Kelsey Kidd's impression that Amazon was the seller of the caffeine powder in question, however, all of the information presented to Kidd on the transaction receipt indicated that the seller and product supplier was TheBulkSource (Tenkoris).

Plaintiff's expert Jon Edward Clark testified that he believed putting a product into the stream of commerce consisted of selling it, that is -- creating a transaction and arranging for shipment. See, Clark Deposition at 46. However, in this specific case, Defendant Tenkoris is the entity that placed the product specific information on Amazon's marketplace and it was Defendant Tenkoris that held the product in hand and arranged for shipment and shipped the product.

Based upon the foregoing, the court finds that Amazon has met its initial burden under Civ.R. 56 of showing the absence of a genuine issue of material fact as to Amazon's liability as a supplier. Plaintiff has failed to meet his corresponding burden of showing

9





the existence of a disputed issue of material fact for trial. The court finds that as a matter of law, Amazon, under the facts of this case, was not a supplier and did not otherwise participate in in the placing of the caffeine powder in the stream of commerce.[6] Amazon's motion for summary judgment is therefore granted on this issue (Count 7).

## Ohio Food & Drug Safety Act

Amazon moves for summary judgment on Plaintiff's claims under Ohio's Food and Drug Safety Act, R.C. §§3715.01 to 3715.99. These claims were also the subject of a prior motion to dismiss wherein the court found that, under the standard applicable to a motion to dismiss, the Complaint pled negligence claims for which the statute would support a negligence *per se* finding should plaintiff be able to prove a violation of the statue.

Revised Code §3715.52(A) provides in part:

> (A)   The following acts and causing them are prohibited:
>
>    (1)   The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated[7] or misbranded;

---

[6] It is important to note that this finding is made under the specific facts of this case. Amazon has a number of different selling formats including but not limited to: proprietary/private label products, products fulfilled by Amazon and products warehoused and shipped directly by Amazon. These selling formats are not implicated in this case where Defendant Tenkoris was an independent third party seller.

[7] Revised Code §3715.52 provides in part:

Food is adulterated * * * if any of the following apply:

(A) It bears or contains any poisonous or deleterious substance that may render it injurious to health; but in case the substance is not an added substance, the food shall not be considered adulterated if the quantity of the substance in the food does not ordinarily render it injurious to health.

The court has reviewed the statute, and section (A) is the only section that would arguably apply in this case to render the caffeine powder adulterated. The FDA apparently sent warning letters to five bulk caffeine suppliers (not including Defendant Tenkoris) and the adulteration warned of by the FDA (under the Dietary Supplement Health and Education Act (DSHEA)) was an "unreasonable risk of illness or injury under the recommended conditions of use." The precise issue was the difficulty in measuring a safe level of caffeine. See, Clark Depo., at 52-55. This goes to correct dosing, which are complicated in this case by the fact that the decedent never saw the Tenkoris packaging, the Tenkoris packaging recommended a dose that would not have been injurious to health, the decedent had only information supplied by Defendant Kidd as to dosing and which recommended a dosing higher than the product packaging but not a lethal dose, and what appears to have been ingestion by the decedent of a dose well in excess of either. Defendant Tenkoris did not receive a warning letter from the FDA, it is unclear whether or not the

10





(2)    The adulteration or misbranding of any food, drug, device, or cosmetic;

(3)    The receipt in commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise;

The statute does not define "sale" or "offering for sale." Black's Law Dictionary defines "sale" as:

> A contract between two parties, called, respectively, the "seller" (or vendor) and the "buyer" (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and possession of the property.

Black's Law Dictionary, 5th Ed., 1979. The court discussion above addresses the fact that at all times, Defendant Tenkoris was the seller of the Hard Rhino Pure Caffeine Powder. The seller's agreement between Amazon and Tenkoris indicated that Tenkoris was the seller and responsible for the products it uploaded to the Amazon marketplace.

As to (A)(1), Amazon did not manufacture, sell, deliver or offer for sale the subject caffeine powder (which is alleged to be adulterated or misbranded).   To the extent any adulteration or misbranding occurred, as set forth in section (A)(2), it would have been at the hands of Defendant Tenkoris or CSPC Pharmaceutical, not Amazon.  Under section (A)(3), because Amazon never had possession of the caffeine powder and it at all times remained under the possession and control of Defendant Tenkoris, this section would likewise not apply.

As for the "offering for sale" language in the statute, again, there is no definition of what constitutes "offering for sale" however, when the listing on Amazon's webstore is viewed from the standpoint of what entity created it, it is clear that the entity offering the caffeine powder for sale was Defendant Tenkoris, not Amazon.

Amazon created a template for uploading products to its marketplace.  The information that populated the fields in the Amazon created template, however, originated from the *seller.* Defendant Tenkoris set the price, created the product descriptions, selected and uploaded the product images and all other information pertinent to the product listing.  In order to complete the sale, all the customer, in this case Defendant Kelsey Kidd, needed to do was select a quantity and then purchase the product.  All of the

---

Hard Rhino product at issue here suffered from the same measurement issues that concerned the FDA.  Pure caffeine powder was not (and is not now) considered an illegal substance.

11



components that resulted in an "offer" were generated by Defendant Tenkoris, not Amazon. This is true notwithstanding the fact that they were *viewable* on Amazon's online marketplace. The template was not the offering for sale, rather, the information supplied by the seller, in this case Tenkoris, was the substance of the "offer for sale."

The court finds that Amazon has met its initial burden of showing the absence of a genuine issue of material fact as to whether it sold or offered for sale the Hard Rhino Pure Caffeine Powder and that Plaintiff has failed to meet his corresponding burden under Civ. R. 56 to show a genuine issue of fact for trial. Amazon's motion for summary judgment is granted on Plaintiff's claims (Counts 1,2 and 3) under the Ohio Food & Drug Safety Act.

**Breach of UCC Implied Warranty of Merchantability**

Amazon moves for summary judgment on Count 8 of Plaintiff's Second Amended Complaint which sets forth a claim for breach of UCC Implied Warranty of Merchantability under Revised Code §1302.27.[8] Section 1302.27 provides:

(A)  Unless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(B)  Goods to be merchantable must be at least such as:

(1)  pass without objection in the trade under the contract description; and

(2)  in the case of fungible goods are of fair average quality within the description; and

(3)  are fit for the ordinary purposes for which such goods are used; and

(4)  run, within the variations permitted by the agreement, of even kind, quality and quantity, within each unit and among all units involved; and

---

[8] The Court previously dismissed Plaintiff's UCC claim for breach of fitness for a particular purpose because the decedent was not the purchaser of the caffeine powder and therefore could not have relied upon Amazon's skill or judgment as it pertained to the product.

12



(5)   are adequately contained, packaged, and labeled as the agreement may require; and

(6)   conform to the promises or affirmations of fact made on the container or label if any.

The threshold determination is whether Amazon is a seller and a merchant with respect to goods of that kind.  As set forth above with regard to Plaintiff's other claims, Amazon is not the seller of the caffeine powder, Defendant Tenkoris was the seller and Tenkoris was the "merchant with respect to goods of that kind."

Beyond this, the decedent was not the purchaser of the caffeine powder and there was no contractual privity between him and Defendant Tenkoris.  In *U.S. Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.*, 21 Ohio St.2d 244, 257 N.E.2d 380 (1970), the Ohio Supreme Court held:

> In order to maintain an action in contract for injury to personal property based upon a contract of sale, which injury is alleged to be caused by a 'breach of an implied warranty of merchantability' under the provisions of the Ohio Uniform Commercial Code covering contracts of sale, the plaintiff must establish a contractual relationship with the defendant.

Id. at syllabus ¶1. In *O'Bryon v. Poff*, Wayne County App. No. 02CA0061, 2003 WL 21487756 (9th Dist.) the court stated that the under the relevant sections of the UCC:

> Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." R.C. 1302.01(A)(8). A buyer is a person who buys or contracts to buy goods, and a seller is a person who sells or contracts to sell goods. R.C. 1302.01(A)(1) and (A)(4).

In this case there is no relationship, contractual or otherwise, between Defendant Tenkoris and the decedent.  The sale of the Hard Rhino Caffeine Powder took place between Defendant Kidd (as the buyer) and Defendant Tenkoris (as the seller).  As a result, none of the warranties set forth in R.C. §1302.27(B) are applicable to the decedent.

The UCC code sections do create an application for implied warranties to third party beneficiaries, however, it is limited in scope.  Revised Code §1302.31 provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is





reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty. * * *

In this case, the decedent still fails to qualify as a natural person who is in the family or household of the buyer or a guest in the home who could reasonably be expected to use or consume the goods. The court finds that the decedent, under the facts of this case, was not an intended third party beneficiary of any implied warranty of merchantability.

Lastly, other courts have held that Amazon's role as a third party platform for sales does not "qualify it as a merchant or seller under * * * [the] UCC." See, *McDonald v. LG Electronics USA, Inc.,* 219 F.Supp.3d 533, 542. (Dismissing plaintiff's UCC breach of implied warranty claims against Amazon.)

For the foregoing reasons, the court finds that Amazon has sustained its burden under Civ. R. 56 and there is no genuine issue of material fact for trial. Plaintiff has failed to meet his corresponding burden and summary judgment is granted in favor of Defendant Amazon on Plaintiff's UCC claim for implied warranty of merchantability (Count 8).

## Fraud

Defendants Amazon have moved for summary judgment on Plaintiff's claim for fraud. The Court addressed this claim in the Amazon's motion to dismiss and found that the fraud claim was abrogated by the OPLA to the extent that it was directed at a duty to warn. See, Order dated September 1, 2015. Nevertheless, the court did not dismiss plaintiff's common law fraud claim as it was pled for concealment and deceit. Defendants now move for summary judgment on this claim arguing that there is no representation made by or that can be linked to Amazon. The only representation was the product listing and that information was supplied solely by Defendant Tenkoris, not Amazon. Plaintiff does not address the fraud claim in his brief in opposition to Amazon's motion.

The elements of fraud consist of:

(1)    a representation (or concealment of a fact when there is a duty to disclose)

(2)    that is material to the transaction at hand,

(3)    made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and





(4)    with intent to mislead another into relying upon it,

(5)    justifiable reliance, and

(6)    resulting injury proximately caused by the reliance.

See, *Bear v. Bear*, 2014 Ohio 2919, 2014 WL 2986461 (9th Dist.). It is undisputed in this case that the only representation at issue here (the product listing information and/or the product label information) was created and uploaded by Defendant Tenkoris. It is also undisputed that these representations would have only been made to the purchaser, Defendant Kelsey Kidd, and not to the decedent. It is undisputed that the decedent was never provided with the packaging or dosing instructions on the Tenkoris label, nor did he ever see them.

The court finds that Amazon has met its burden of showing the absence of a genuine issue of material fact as to Plaintiff's claim for common law fraud and Plaintiff has failed to meet its reciprocal burden. Summary judgment is hereby granted in favor of Amazon on Count 12 of Plaintiff's Second Amended Complaint.

## Punitive Damages

Plaintiff's Complaint also states a claim for punitive damages. The burden of proof as to punitive damages is by clear and convincing evidence. R.C. 2315.21(D)(4). However, in *Moskovitz v. Mt. Sinai Medical Center*, 69 Ohio St.3d 638, 635 N.E.2d 331, 1994 Ohio 324 (1994), the Ohio Supreme Court stated in regard to punitive damage claims:

> In Ohio, no civil action may be maintained simply for punitive damages. * * *
> Rather, punitive damages are awarded as a mere incident of the cause of action
> in which they are sought. *Id.* Thus, compensable harm stemming from a
> cognizable cause of action must be shown to exist before punitive damages can
> be considered. [Citations omitted.]

Id. 650, 342. See also, *Miller v. City of Xenia*, Greene App. No. 2001 CA 82, 2002 WL 441386 (2nd Dist., 2002). (Dismissing punitive damage claim were underlying claims did not survive summary judgment motion.) Because this court has granted summary judgment on plaintiff's underlying claims, the claim for punitive damages may not stand independently, and therefore, summary judgment is likewise granted on plaintiff's punitive damage claim.

## Section 230 Immunity – Communications Decency Act (CDA)

Finally, Amazon advances an argument under 47 U.S.C.A. Section 230 (eff. 10/21/1998), which has been applied to interactive computer service providers such as

15



Amazon, Ebay, Craigslist and others where the service provider has been sued based upon information supplied by another party but which was published and/or appeared on the service providers' website. This federal statute provides in pertinent part:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." (47 U.S.C. § 230(c)(1).)[9]

The statute further provides:

> (e) Effect on other laws * * *
>
> (3) State Law
>
> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. *No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.* (§ 230 (e)(1)(3), italics added.)

Plaintiff disputes the applicability of this statute to the instant case, however, it would appear relevant to the extent that where, as here, the plaintiff is attempting to hold Amazon liable for information it published, but which was created and uploaded by another (Defendant Tenkoris) and where the claim is that Amazon's publishing of the information was a violation of law.  A number of the cases where courts have applied the section 230 immunity addressed situations involving illegal goods.  While the act appears to have been created for the purpose of addressing the blocking and screening of offensive material such as pornography, there can be no question but that courts have applied it where there have been allegations that an interactive computer service was responsible for "publishing" a specific product or listing – whether it be illegal, dangerous or recalled.

As set forth above, at the time Tenkoris sold the pure caffeine powder to Defendant Kidd up to the current time, it is not illegal to sell pure caffeine powder. However, even assuming that there was some liability for selling the caffeine powder in the first instance, the act has been applied by the courts to answer the direct question of whether an interactive computer service may be held liable as the publisher of the information supplied by another content provider.  Courts applying the act to this precise

---

[9] The act defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer system."

16





question have found in the negative.  See, *Lars Gentry v. eBay*, Inc., 99 Cal.App.4th 816 (2002) (Finding eBay not responsible under Section 230 for its dissemination of representations made by  the individual defendants or the posting of compilations or information generated by those defendants and third parties.") *Doe v. American Online, Inc.*, Dist. Ct. App. No. 97-2587, 718 So.2d 385,(Fla., 1998).  ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.")

In *Gibson v. Craigslist*, U.S. Dist.Ct. Case No. 08CIV7735, 2009 WL 1704355 (S.D. NY, 2009) the court considered claims brought by a plaintiff against Craigslist for injuries he sustained when he was shot by a handgun purchased from a Criagslist seller.  Craigslist asserted immunity under Section 230 and the court stated:

> Courts engage in a three part inquiry when determining the availability of immunity under the CDA, *i.e.,* "[i] whether Defendant is a provider of an interactive computer service; [ii] if the postings at issue are information provided by another information content provider; and [iii] whether Plaintiff's claims seek to treat Defendant as a publisher or speaker of third party content." *   *   *   "Courts across the country have repeatedly held that the CDA's grant of immunity should be construed broadly."
>
> Plaintiff seeks to hold Defendant liable for its alleged failure to block, screen, or otherwise prevent the dissemination of a third party's content, *i.e.,* the gun advertisement in question, *   *   *   alleging, among other things, that Defendant "failed to monitor, regulate, properly maintain and police the merchandise being bought and sold on its ... website" and "is either unable or unwilling to allocate the necessary resources to monitor, police, maintain and properly supervise the goods and services sold on its ... website." *   *   *   It is clear that Plaintiff's claims are directed toward Craigslist as a "publisher" of third party content and "Section 230 specifically proscribes liability in such circumstances." [Citations omitted.]

The court held that Craigslist was immune under Section 230.  As in *Gibson*, Stiner seeks to hold Amazon liable in this case for the dissemination of Defendant Tenkoris' content. Because Plaintiff's claims are for the "publishing" of a third party's consent, if Section 230 applies at all, it would provide immunity to Amazon under these facts.

In *Hinton v. Amazon.com.dedc, LLC*, U.D. Dist.Ct. No. 2:13CV237, 72 F. Supp.3d 685 S.D. Mississippi, 2014), the plaintiff sued eBay for selling defective hunting equipment that had been recalled by the United States Consumer Product Safety Commission.[10]

---

[10] The plaintiff's amended complaint in *Hinton* set forth claims for : 1) injunction; 2) negligence; 3) intentional conduct; 4) gross negligence; 5) breach of implied warranty of merchantability; 6) failure to warn; 7) breach of duty

17



Ebay filed a motion to dismiss on the basis that plaintiff's claim against it were barred by section 230. Finding that section 230 immunity applied, the court observed:

> Plaintiff's central factual allegation in support of liability is that eBay permitted a retailer "to advertise and sell the aforementioned recalled product to the Plaintiff through a listing on its auction website after eBay knew or should have known of the CPSC recall." *   *   *   Based on these particulars, the Court finds that all of the Plaintiff's claims against eBay arise or "stem from the publication of information [on www.ebay.com] created by third parties...." CDA immunity will attach in the absence of a statutory exception.

Id. at 690.

In *Stoner v. eBay, Inc.*, Superior Ct. San Francisco Cty. Case No. 305666, 2000 WL 1705637 (Nov. 1, 2000), the plaintiff sued eBay claiming that eBay profited from selling bootleg and other unauthorized sound recordings in violation of law. Specifically, the claims against eBay alleged that:

> (1) eBay actually sells, or at minimum, advertises and offers for sale, and causes the sale of, various bootleg and other infringing sound recordings;

> (2) eBay engages in unfair business practices in that, knowing full well that infringing sound recording auctions are prevalent on its site, eBay actively promotes and enables those auctions and takes a commission on each sale, even though it could eliminate said infringing auction if it wanted to; and

> (3) eBay itself engages in conduct likely to deceive the public in that it knows about and actively facilitates infringing sound recording auctions even though, as it also knows, many of the ultimate purchasers of the recordings truly do not realize they are buying illegal items with no resale value.

The *Stoner* court noted that under the section 230:

> The undisputed facts establish that the descriptions of the goods and services auctioned over the eBay service are created entirely by the sellers. *   *   * EBay is not responsible for the creation or development of information relating to any of the products for which it provides auction services. While eBay may add additional information to its web pages, such as logos, category headings and seller ratings, this information is not unlike the information added to many web pages, the purpose of which is to facilitate ease of use and access to the content

---

of good faith and fair dealing; 8) violation of Mississippi Consumer Protection Act (MCPA); 9) violation of federal law' and 10) punitive damages.



provided by the third-party. EBay, therefore, is not an information content provider or joint information content provider with respect to the description of auctioned goods. [Citations omitted.][11]

Id. In ultimately granting summary judgment in favor of eBay, the court held:

> Despite plaintiff's attempt to characterize eBay as an active participant in the sale of products auctioned over its service, plaintiff is seeking to hold eBay responsible for informing prospective purchasers that illegal recordings may be purchased-information that originates with the third party sellers who use the computer service. The uncontroverted facts establish that eBay's role does not extend beyond the scope of the federal immunity. EBay provides an interactive computer service by which sellers of goods and services describe over the Internet the products they wish to sell, and sell them to the person who agrees, by submitting a bid through eBay's web site in accordance with the rules of the service, to pay the highest price for the product. EBay provides interactive computer services for which it charges a fee, just as America Online provides interactive services for which it charges a fee. EBay does not select items to be auctioned, does not inspect or come into possession of those items at any time, does not describe the items to prospective bidders, and does not determine the minimum price which the seller will accept for the item. EBay does advertise and promote its auction service, and charges a fee for the use of its service. However, neither aggressive advertising nor the imposition of a fee-including a fee based in part on the price at which an item is sold-transforms an interactive service provider into a seller responsible for items sold. [Citations omitted.]

After reviewing cases from other jurisdictions that have considered an applied section 230 to cases similar to the case at hand, the court finds that to the extent that section 230 is applicable to the instant case, the immunity provided thereunder would further support the finding already made by the court that Amazon is not a supplier or seller of the pure caffeine powder and that it cannot be held liable under the specific facts of this case.

For all of the foregoing reasons, Defendant Amazon's motion for summary judgment on all claims in Plaintiff's Second Amended Complaint is GRANTED.

---

[11] The court also addressed the handling of payment for sold items and stated: "eBay's Billpoint service enables buyers to pay for auctioned items by credit card or electronic check. Neither the escrow service nor the Billpoint, however, renders eBay a seller. Both are merely additional services which promote the provident and efficient use of eBay's auction service, irrespective of the legality or illegality of the item being auctioned. These additional features are available with respect to all goods and services auctioned-they are not limited to recordings, much less to illegal recordings."

19



**Plaintiff Dennis Stiner's Motion for Summary Judgment.**

Plaintiff Dennis Stiner has also filed a motion for summary judgment in this case on the issue of Defendants Amazon's status as a "supplier" of the pure caffeine powder and also that Amazon may be held liable as a manufacturer under Revised Code §2307.78(B). For the reasons set forth above, and conversely construing the evidence and testimony before it in favor of Plaintiff Stiner on these issues, the court finds that Plaintiff has failed to meet his initial burden of showing the presence of a genuine issue of material fact for trial, and accordingly, Plaintiff's motion for summary judgment is hereby DENIED.

There is no just reason for delay.   Case closed.  Costs to Plaintiff Dennis Stiner.

IT IS SO ORDERED.

VOL____PAGE____

John R. Miraldi, Judge

cc:    All Parties

**TO THE CLERK: THIS IS A FINAL APPEALABLE ORDER PLEASE SERVE UPON ALL PARTIES NOT IN DEFAULT FOR FAILURE TO APPEAR, NOTICE OF THE JUDGMENT AND ITS DATE OF ENTRY UPON THE JOURNAL.**

20